[No. S066034. Nov. 23, 1998.]

KELVIN EUGENE WILEY, Plaintiff and Respondent, v.
COUNTY OF SAN DIEGO et al., Defendants and Appellants.

## COUNSEL

Lloyd M. Harmon, Jr., and John J. Sansone, County Counsel, Diane Bardsley, Chief Deputy County Counsel, and William A. Johnson, Jr., Deputy County Counsel, for Defendants and Appellants.

Ault, Davis & Schonfeld, Thomas H. Ault, Cecilia P. Ruby and Rosary C. Hernandez as Amici Curiae on behalf of Defendants and Appellants.

Kozel, Rady & Brack, Kozel & Rady and Timothy J. Kozel for Plaintiff and Respondent.

## OPINION

**BROWN, J.**—When a former criminal defendant sues for legal malpractice, is actual innocence a necessary element of the cause of action? For reasons of policy and pragmatism, we conclude the answer is yes.

### FACTUAL AND PROCEDURAL BACKGROUND

Because a full recital of the underlying facts is not pertinent to resolution of the question presented, we relate them only in brief: In September 1990, plaintiff Kelvin Eugene Wiley (Wiley) was arrested and charged with burglary and various assaultive crimes against Toni DiGiovanni, a former girlfriend with whom he had a stormy relationship. At arraignment, he denied the charges and Deputy Public Defender John Jimenez was appointed to represent him. Wiley claimed he had been at his apartment at the time of the alleged crimes, and Jimenez arranged for an investigator to contact witnesses and prepare a report. The investigator had only limited success in finding anyone to establish an alibi. In the meantime, Wiley took a polygraph test, which Jimenez was informed he "had not passed."

At trial, DiGiovanni, the only percipient witness, testified that after Wiley entered her condominium in a rage, he hit her repeatedly with a wrench, threatened to kill her, and strangled her with a belt until she lost consciousness. Her 11-year-old son, Eric, testified that he found his mother lying on the floor and that Wiley had physically abused her on prior occasions. He also stated he saw Wiley's truck drive into the cul-de-sac where they lived the morning of the alleged attack. Taking the stand in his own behalf, Wiley denied attacking DiGiovanni and said she had been following and harassing him because he wanted to break off their relationship. According to his landlord, Wiley's truck was parked outside his duplex early on the morning of the alleged assault, and he did not see Wiley enter or leave his residence. Numerous character witnesses also attacked DiGiovanni's credibility.

A jury convicted Wiley of battery causing serious bodily injury, but could not reach verdicts on the remaining counts, which the prosecutor dismissed. Wiley was sentenced to four years in state prison. While his appeal was pending, he filed a petition for writ of habeas corpus challenging Jimenez's representation as ineffective due to his inadequate investigation of the defense. In support of the petition, he submitted declarations from several of DiGiovanni's neighbors, none of whom had been contacted by the defense investigator. In sum, they stated they had seen DiGiovanni driving away from her residence early on the morning in question and later saw a man other than Wiley banging on her door and shouting, "Let me in." They

noticed no signs of injury in the days following the incident. The trial court denied the petition, finding Wiley had failed to establish that the investigation, preparation, or trial strategy had been inadequate.

A year later, Wiley filed a second habeas corpus petition. In addition to the previous declarations, he submitted evidence DiGiovanni's son had recanted his statement that Wiley's truck was at the condominium the morning of the alleged attack. The court granted the petition, finding that the son had lied at trial and that his testimony was crucial to the conviction. As a second basis for granting relief, the court determined Jimenez's inadequate investigation had deprived Wiley of exculpatory witnesses. The prosecutor later dismissed the case.

Wiley then filed the present legal malpractice action against Jimenez and the County of San Diego (defendants). Prior to trial, the court determined Wiley's innocence was not an issue and refused to require proof on the matter or submit the question to the jury. The jury found in favor of Wiley and awarded him $162,500. On appeal, defendants challenged, inter alia, the trial court's ruling on the issue of actual innocence. In support of their argument, they cited *Tibor* v. *Superior Court* (1997) 52 Cal.App.4th 1359 [61 Cal.Rptr.2d 326], in which the appellate court "concluded that, as a matter of sound public policy, a former criminal defendant, in order to establish proximate cause [in a legal malpractice action], must prove, by a preponderance of the evidence, not only that his former attorney was negligent in his representation, but that he (the plaintiff) was innocent of the criminal charges filed against him." (*Id.* at p. 1373.)

The Court of Appeal reversed the judgment because the trial court erroneously admitted the transcript of the second habeas corpus hearing and erroneously excluded certain evidence on which Jimenez based his trial strategy: the polygraph examination, a psychological evaluation of Wiley, and a prior domestic violence incident. Defendants' arguments on the question of actual innocence were rejected, however. The court acknowledged the "visceral appeal" of imposing such a requirement, but declined to do so for several reasons. First, "it is 'difficult to defend logically a rule that requires proof of innocence as a condition of recovery, especially if a clear act of negligence of defense counsel was obviously the cause of the defendant's conviction of a crime.' (*Glenn* [v. *Aiken* (1991) 409 Mass. 699] 569 N.E.2d [783,] 787, fn. omitted.)" Second, creating a separate standard for clients represented in a criminal setting is "fundamentally incompatible" with the constitutional guaranty of effective assistance of counsel. Third, no empirical evidence supported the rationale, advanced by some courts, that the threat of malpractice claims would discourage representation of criminal

defendants, particularly those who are indigent. Finally, an actual innocence requirement would create "rather artificial distinctions" between criminal defense attorneys and civil attorneys.

We granted review to resolve the conflict in the Courts of Appeal and settle an important issue of state law.

## DISCUSSION

In their seminal commentary, Justice Otto Kaus and Ronald Mallen remarked on the "dearth of criminal malpractice litigation," noting only a handful of reported cases nationwide as of 1974. (Kaus & Mallen, *The Misguiding Hand of Counsel—Reflections on "Criminal Malpractice"* (1974) 21 UCLA L.Rev. 1191, 1193 (Kaus & Mallen).)[1] Today by contrast, they would find a plethora of decisions, generated by the ever-rising tide of professional negligence actions generally. (See, e.g., Annot., Legal Malpractice in Defense of Criminal Prosecution (1992) 4 A.L.R.5th 273; see also 3 Mallen & Smith, Legal Malpractice (4th ed. 1996) § 25.1, p. 226.) Nevertheless, this court has yet to address any aspect of criminal malpractice, including the relevance of the plaintiff's actual innocence.

■ In civil malpractice cases, the elements of a cause of action for professional negligence are: "(1) the duty of the attorney to use such skill, prudence and diligence as members of the profession commonly possess; (2) a breach of that duty; (3) a proximate causal connection between the breach and the resulting injury; and (4) actual loss or damage. [Citations.]" (*Schultz* v. *Harney* (1994) 27 Cal.App.4th 1611, 1621 [33 Cal.Rptr.2d 276].)
■ In criminal malpractice cases, the clear majority of courts that have considered the question also require proof of actual innocence as an additional element.[2] (See *Kramer* v. *Dirksen* (1998) 296 Ill.App.3d 819 [231 Ill.Dec. 169, 695 N.E.2d 1288, 1290]; *Ray* v. *Stone* (Ky.Ct.App. 1997) 952

---

[1] As the authors explain, "[t]he term 'criminal malpractice' implies no criminality on the part of the attorney. We use it elliptically to mean 'legal malpractice in the course of defending a client accused of crime.' Its counterpart is, of course, civil malpractice." (Kaus & Mallen, *supra*, 21 UCLA L.Rev. at p. 1191, fn. 2.) For purposes of our discussion, we adopt the same terminology.

[2] Many of these decisions further require that "the person's conviction has been reversed, . . . on appeal or through post-conviction relief, or the person otherwise has been exonerated." (*Stevens* v. *Bispham* (1993) 316 Or. 221, 230 [851 P.2d 556, 561]; see also, e.g., *Morgano* v. *Smith* (1994) 110 Nev. 1025, 1029 [879 P.2d 735, 737]; *Peeler* v. *Hughes & Luce* (Tex. 1995) 909 S.W.2d 494, 497.) In *Weiner* v. *Mitchell, Silberberg & Knupp* (1980) 114 Cal.App.3d 39 [170 Cal.Rptr. 533], the Court of Appeal impliedly imposed such a requirement. In that case, the plaintiff remained convicted on charges of federal securities violations when he brought his malpractice action. (*Id.* at p. 48.) The trial court sustained a demurrer, which the appellate court affirmed in part because the doctrine of collateral

S.W.2d 220, 224; *Glenn* v. *Aiken* (1991) 409 Mass. 699 [569 N.E.2d 783, 785, 4 A.L.R.5th 1060]; *Morgano* v. *Smith, supra,* 879 P.2d at pp. 737-738; *Carmel* v. *Lunney* (1987) 70 N.Y.2d 169, 173 [518 N.Y.S.2d 605, 607, 511 N.E.2d 1126]; *Stevens* v. *Bispham, supra,* 851 P.2d at p. 566; *Bailey* v. *Tucker* (1993) 533 Pa. 237, 247 [621 A.2d 108, 113]; *Peeler* v. *Hughes & Luce, supra,* 909 S.W.2d at p. 497; *Levine* v. *Kling* (7th Cir. 1997) 123 F.3d 580, 582 [construing Illinois law]; see also *Lamb* v. *Manweiler* (1996) 129 Idaho 269 [923 P.2d 976, 978] [noting plaintiff did not dispute proposition that actual innocence was "additional element" of criminal malpractice cause of action]; *State* ex rel. *O'Blennis* v. *Adolf* (Mo.Ct.App. 1985) 691 S.W.2d 498, 503 [plaintiff's guilty plea precluded criminal malpractice action on principles of collateral estoppel]; cf. *Weiner* v. *Mitchell, Silberberg & Knupp, supra,* 114 Cal.App.3d at p. 48 [plaintiff's guilt was proximate cause of conviction]; *Adkins* v. *Dixon* (1997) 253 Va. 275, 282 [482 S.E.2d 797, 802] ["actual guilt" is material consideration on issue of proximate cause].)

Common to all these decisions are considerations of public policy: " '[P]ermitting a convicted criminal to pursue a legal malpractice claim without requiring proof of innocence would allow the criminal to profit by his own fraud, or to take advantage of his own wrong, or to found [a] claim upon his iniquity, or to acquire property by his own crime. As such, it is against public policy for the suit to continue in that it "would indeed shock the public conscience, engender disrespect for courts and generally discredit the administration of justice." ' [Citations.]" (*Peeler* v. *Hughes & Luce, supra,* 909 S.W.2d at p. 497; *State* ex rel. *O'Blennis* v. *Adolf, supra,* 691 S.W.2d at p. 504.) " '[C]ourts will not assist the participant in an illegal act who seeks to profit from the act's commission.' " (*Adkins* v. *Dixon, supra,* 482 S.E.2d at p. 801.)

Additionally, "allowing civil recovery for convicts impermissibly shifts responsibility for the crime away from the convict. This opportunity to shift much, if not all, of the punishment assessed against convicts for their criminal acts to their former attorneys, drastically diminishes the consequences of the convicts' criminal conduct and seriously undermines our system of criminal justice. [Citation.]" (*Peeler* v. *Hughes & Luce, supra,* 909 S.W.2d at p. 498; see also *Levine* v. *Kling, supra,* 123 F.3d at p. 582.) "[I]f

estoppel precluded relitigation of his guilt "and we must, therefore, accept as the proximate cause of his indictment, and of all the damages which occurred to him by reason of it, his guilt and his guilt alone." (*Ibid.*) Under our holding today, the decision in *Weiner* would be correct independent of any consideration of postconviction relief. Whether such relief is a prerequisite to maintaining a criminal malpractice action has significant implications, e.g., for determining statute of limitations and collateral estoppel issues. Since Wiley's conviction was overturned on habeas corpus and the charge was ultimately dismissed, we have no occasion on these facts to address this distinct question.

plaintiffs engaged in the criminal conduct they are accused of, then they alone should bear full responsibility for the consequences of their acts, including imprisonment. Any subsequent negligent conduct by a plaintiff's attorney is superseded by the greater culpability of the plaintiff's criminal conduct. [Citation.]" (*Shaw* v. *State, Dept. of Admin.* (Alaska 1993) 861 P.2d 566, 572.) Accordingly, "[t]hese cases treat a defendant attorney's negligence as not the cause of the former client's injury as a matter of law, unless the plaintiff former client proves that he did not commit the crime." (*Glenn* v. *Aiken, supra,* 569 N.E.2d at p. 786; *Ray* v. *Stone, supra,* 952 S.W.2d at p. 224; *Bailey* v. *Tucker, supra,* 621 A.2d at p. 113; *Peeler* v. *Hughes & Luce, supra,* 909 S.W.2d at p. 498.)

Notwithstanding these policy considerations, actual innocence is not a universal requirement. (See *Gebhardt* v. *O'Rourke* (1994) 444 Mich. 535 [510 N.W.2d 900]; *Krahn* v. *Kinney* (1989) 43 Ohio St.3d 103 [538 N.E.2d 1058 ]; see also *Silvers* v. *Brodeur* (Ind.Ct.App. 1997) 682 N.E.2d 811.)[3] Those courts declining to require such proof generally do not discuss the public policy implications but simply consider criminal malpractice as indistinguishable from civil malpractice. For example, in *Krahn* v. *Kinney, supra,* 538 N.E.2d 1058, defense counsel failed to convey a plea bargain offer and his client ultimately pled guilty to a more serious charge than offered. The reviewing court allowed the client's subsequent criminal malpractice action to proceed without proof of innocence, analogizing to what it considered comparable negligence in a civil context. "The situation is like that in a civil action where the attorney fails to disclose a settlement offer. Such failure [exposes] the attorney to a claim of legal malpractice. [Citations.]" (*Id.* at p. 1061; see *Mylar* v. *Wilkinson, supra,* 435 So.2d at p. 1239; *Jepson* v. *Stubbs, supra,* 555 S.W.2d at pp. 313-314; see also Kaus & Mallen, *supra,* 21 UCLA L.Rev. at p. 1205.)

We find these latter decisions unpersuasive. To begin, the public policy reasons articulated in favor of requiring proof of actual innocence are compelling. Our legal system is premised in part on the maxim, "No one can take advantage of his own wrong." (Civ. Code, § 3517; see Prob. Code,

---

[3]Wiley cites several other cases that assertedly stand for the proposition that actual innocence is not required to maintain a criminal malpractice action. While it is possible to read into these decisions such an assumption, none actually addressed the precise issue. (See *Mylar* v. *Wilkinson* (Ala. 1983) 435 So.2d 1237, 1239 [no discussion of actual innocence in finding plaintiff failed to establish causation]; *Bowman* v. *Doherty* (1984) 235 Kan. 870 [686 P.2d 112] [no consideration of plaintiff's guilt in discussing emotional distress action]; *Jepson* v. *Stubbs* (Mo. 1977) 555 S.W.2d 307, 313 [postconviction relief not condition of maintaining criminal malpractice action, therefore statute of limitations does not extend to time when obtained]; *Duncan* v. *Campbell* (1997) 123 N.M. 181 [936 P.2d 863, 867-868] [same]; *McCord* v. *Bailey* (D.C. Cir. 1980) 636 F.2d 606, 611-612 [204 App.D.C. 334] [no proximate injury because unasserted defense was not legally viable].)

§ 250 et seq. [prohibiting financial gain by one who feloniously and intentionally kills]; *Whitfield* v. *Flaherty* (1964) 228 Cal.App.2d 753, 758 [39 Cal.Rptr. 857]; cf. Civ. Code, § 3333.3 [no tort recovery if plaintiff's injury caused by own commission of felony].) Regardless of the attorney's negligence, a guilty defendant's conviction and sentence are the direct consequence of his own perfidy. The fact that nonnegligent counsel "could have done better" may warrant postconviction relief, but it does not translate into civil damages, which are intended to make the plaintiff whole. (See *post*, at pp. 541-543.) While a conviction predicated on incompetence may be erroneous, it is not unjust. "Arguably, . . . the values which favor the accused in the context of the criminal process lose their validity when that process comes to its end. For example, what would be the result of a public opinion poll which asks this question: 'Should a lawyer have to pay damages to a guilty client because he negligently fails to secure an acquittal?' Surely a very substantial percentage of those polled would say that the guilty client is not entitled to damages since—God works in mysterious ways—'justice' was done." (Kaus & Mallen, *supra*, 21 UCLA L.Rev. at p. 1203.)

Only an innocent person wrongly convicted due to inadequate representation has suffered a compensable injury because in that situation the nexus between the malpractice and palpable harm is sufficient to warrant a civil action, however inadequate, to redress the loss. (See *Bailey* v. *Tucker*, *supra*, 621 A.2d at p. 113.) In sum, "the notion of paying damages to a plaintiff who actually committed the criminal offense solely because a lawyer negligently failed to secure an acquittal is of questionable public policy and is contrary to the intuitive response that damages should only be awarded to a person who is truly free from any criminal involvement." (*Holliday* v. *Jones* (1989) 215 Cal.App.3d 102, 115, fn. 7 [264 Cal.Rptr. 448].) We therefore decline to permit such an action where the plaintiff cannot establish actual innocence. (Cf. Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments* (1970) 38 U. Chi. L.Rev. 142.)

The public policy rationale is strongest when the malpractice plaintiff claims that some species of trial-related error resulted in a conviction. In other circumstances, where guilt is conceded or undeniable, it admittedly gives rise to a certain tension if counsel's negligence nonetheless caused a less favorable outcome. Kaus and Mallen anticipated this conflict: "Paradoxically, perhaps, the temptation to urge the relevance of actual guilt is strongest in situations in which the malpractice may be the least excusable, such as the lawyer's failure to raise a defense available to the client which would have prevented the prosecution from even going to trial. Thus, if the lawyer failed to make a motion to suppress a balloon of heroin which had been stomach-pumped from the client after he swallowed it when threatened

by an illegal arrest, the client should be entitled to a directed verdict on the issues of malpractice and causation; yet if actual guilt is relevant, he should be nonsuited. The paradox arises, of course, from the fact that the malpractice is liable to be most obvious where it consists of a failure to raise what, for want of a better word, we may call a 'technical' defense—one which would result in a favorable disposition of the criminal proceedings without the issue of the client's guilt ever being submitted to a jury. In many cases the 'technical' defense will be the only one the client has: if not asserted, a conviction is a foregone conclusion." (Kaus & Mallen, *supra*, 21 UCLA L.Rev. at p. 1205; *Glenn* v. *Aiken*, *supra*, 569 N.E.2d at p. 787; see also *Silvers* v. *Brodeur*, *supra*, 682 N.E.2d at p. 818 ["[C]riminal defendants who are harmed by their attorneys' negligence in ways other than conviction, such as by the imposition of lengthier sentences, will be completely without relief."].)

Even courts adopting an actual innocence prerequisite have noted this quandary. "[A] requirement that a plaintiff, the former criminal defendant, must prove his innocence of the crime with which he was charged may relieve the defendant attorney, his former counsel, of liability for harm that the plaintiff suffered only because of his defense counsel's negligence. For example, if a defendant attorney failed to assert a clearly valid defense of the statute of limitations, a client who did commit the crime, but should not have been convicted of it, sustained a real loss, but he may not recover against the attorney defendant. . . . [¶] . . . [¶] It may be difficult to defend logically a rule that requires proof of innocence as a condition of recovery, especially if a clear act of negligence of defense counsel was obviously the cause of the defendant's conviction of a crime." (*Glenn* v. *Aiken*, *supra*, 569 N.E.2d at p. 787, fn. omitted; see *Carmel* v. *Lunney*, *supra*, 518 N.Y.S.2d at p. 607.)

This theoretical dilemma is predicated in part on too literal a translation of the civil malpractice model, which operates on strict "but for" principles of causation. In a civil malpractice action, the focus is solely on the defendant attorney's alleged error or omission; the plaintiff's conduct is irrelevant. (See Kaus & Mallen, *supra*, 21 UCLA L.Rev. at p. 1203.) In the criminal malpractice context, by contrast, a defendant's own criminal act remains the ultimate source of his predicament irrespective of counsel's subsequent negligence. Any harm suffered is *not* "only because of" attorney error but principally due to the client's antecedent criminality. Thus, it is not at all difficult to defend a different rule, because criminal prosecution takes place in a significantly different procedural context, "and as a result the elements to sustain such a cause of action must likewise differ." (*Bailey* v. *Tucker*, *supra*, 621 A.2d at p. 114; *Carmel* v. *Lunney*, *supra*, 518 N.Y.S.2d at p. 607; see *Holliday* v. *Jones*, *supra*, 215 Cal.App.3d at p. 115, fn. 7; see also Kaus & Mallen, *supra*, 21 UCLA L.Rev. at p. 1203.)

In larger part, the expressed concern fails to account for the nature and function of the constitutional substructure of our criminal justice system. For example, "it is clear that our society has willingly chosen to bear a substantial burden [by requiring proof beyond a reasonable doubt] in order to protect the innocent . . . ." (*Patterson* v. *New York* (1977) 432 U.S. 197, 208 [97 S.Ct. 2319, 2326, 53 L.Ed.2d 281].) "The standard provides concrete substance for the presumption of innocence—that bedrock 'axiomatic and elementary' principle whose 'enforcement lies at the foundation of the administration of our criminal law.' [Citation.]" (*In re Winship* (1970) 397 U.S. 358, 363 [90 S.Ct. 1068, 1072, 25 L.Ed.2d 368].) Indeed, "[c]ompliance with the standard of proof beyond a reasonable doubt is the defining, central feature in criminal adjudication, unique to the criminal law. [Citation.] Its effect is at once both symbolic and practical, as a statement of values about respect and confidence in the criminal law, [citation], and an apportionment of risk in favor of the accused [citation]." (*Foucha* v. *Louisiana* (1992) 504 U.S. 71, 93 [112 S.Ct. 1780, 1792, 118 L.Ed.2d 437] (dis. opn. of Kennedy, J.).) Simply put, it is "bottomed on a fundamental value determination of our society that it is far worse to convict an innocent man than to let a guilty man go free." (*In re Winship, supra,* 397 U.S. at p. 372 [90 S.Ct. at p. 1077] (conc. opn. of Harlan, J.); see *Speiser* v. *Randall* (1958) 357 U.S. 513, 525-526 [78 S.Ct. 1332, 1341-1342, 2 L.Ed.2d 1460]; cf. *Abney* v. *United States* (1977) 431 U.S. 651, 661 [97 S.Ct. 2034, 2041, 52 L.Ed.2d 651] [The prohibition against double jeopardy "protects interests wholly unrelated to the propriety of any subsequent conviction."].)

The exclusionary rule allows "[t]he criminal . . . to go free because the constable has blundered." (*People* v. *Defore* (1926) 242 N.Y. 13, 21 [150 N.E. 585, 587].) Nevertheless, irrespective of the cost " 'there is another consideration—the imperative of judicial integrity.' [Citation.] The criminal goes free, if he must, but it is the law that sets him free." (*Mapp* v. *Ohio* (1961) 367 U.S. 643, 659 [81 S.Ct. 1684, 1694, 6 L.Ed.2d 1081, 84 A.L.R.2d 933]; see also *Arizona* v. *Hicks* (1987) 480 U.S. 321, 329 [107 S.Ct. 1149, 1154-1155, 94 L.Ed.2d 347]; *Miller* v. *United States* (1958) 357 U.S. 301, 313 [78 S.Ct. 1190, 1197-1198, 2 L.Ed.2d 1332].) "[T]he purpose of the exclusionary rule 'is to deter—to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it.' [Citation.]" (*Mapp* v. *Ohio, supra,* 367 U.S. at p. 656 [81 S.Ct. at p. 1692].)

These and other constitutional protections are to safeguard against conviction of the wrongly accused and to vindicate fundamental values. They are not intended to confer any direct benefit outside the context of the criminal justice system. Thus, defense counsel's negligent failure to utilize them to

secure an acquittal or dismissal for a guilty defendant does not give rise to civil liability. (Cf. *Levine* v. *Kling, supra,* 123 F.3d at p. 582.) Rather, the criminal justice system itself provides adequate redress for any error or omission and resolves the apparent paradox noted in case and commentary. All criminal defendants have a Sixth Amendment right to effective assistance of counsel; that is, counsel acting reasonably " 'within the range of competence demanded of attorneys in criminal cases.' [Citation.]" (*Strickland* v. *Washington* (1984) 466 U.S. 668, 687 [104 S.Ct. 2052, 2064, 80 L.Ed.2d 674].) Not only does the Constitution guarantee this right, any lapse can be rectified through an array of postconviction remedies, including appeal and habeas corpus. Such relief is afforded even to those clearly guilty as long as they demonstrate incompetence and resulting prejudice, i.e., negligence and damages, under the same standard of professional care applicable in civil malpractice actions. (See *McCord* v. *Bailey, supra,* 636 F.2d at p. 609.)

If, for example, counsel failed to move to suppress unlawfully obtained evidence dispositive of guilt or to raise a claim of double jeopardy or to interpose a meritorious defense, the defendant would not be denied the opportunity to prove he would have prevailed on such a motion or defense and avoided conviction notwithstanding incontrovertible proof he committed a crime. (See *People* v. *Mendoza Tello* (1997) 15 Cal.4th 264, 266-267 [62 Cal.Rptr.2d 437, 933 P.2d 1134] [habeas corpus available for failure to bring suppression motion]; *People* v. *Belcher* (1974) 11 Cal.3d 91, 101 [113 Cal.Rptr. 1, 520 P.2d 385] [ineffective assistance of counsel for failure to assert former acquittal defense]; *People* v. *Camilleri* (1990) 220 Cal.App.3d 1199, 1203 [269 Cal.Rptr. 862] [appeal available for failure to bring suppression motion]; *People* v. *Farley* (1979) 90 Cal.App.3d 851, 868 [153 Cal.Rptr. 695, 12 A.L.R.4th 301] [conviction reversed for failure "to make the appropriate suppression-of-evidence motions"].) An attorney's dereliction concerning sentencing matters and plea bargaining is likewise subject to postconviction challenge. (See *In re Alvernaz* (1992) 2 Cal.4th 924, 934-935 [8 Cal.Rptr.2d 713, 830 P.2d 747] [ineffective assistance in conjunction with plea bargains]; *People* v. *Huynh* (1991) 229 Cal.App.3d 1067, 1083 [281 Cal.Rptr. 785] [same: counsel's misadvice regarding probable minimum prison term before parole eligibility]; *People* v. *Brown* (1986) 177 Cal.App.3d 537, 554 [223 Cal.Rptr. 66] [same: inadequately pursuing or perfecting plea negotiations]; *People* v. *Cropper* (1979) 89 Cal.App.3d 716, 721 [152 Cal.Rptr. 555] [same: arguing against defendant at sentencing]; *People* v. *McCary* (1985) 166 Cal.App.3d 1, 7-8 [212 Cal.Rptr. 114] [same: failure to object to inapplicable sentencing enhancement]; see also *Stevens* v. *Bispham, supra,* 851 P.2d at p. 565.)

In such instances of attorney negligence, postconviction relief will provide what competent representation should have afforded in the first instance:

dismissal of the charges, a reduced sentence, an advantageous plea bargain. In the case of trial error, the remedy will be a new trial. If the defendant has in fact committed a crime, the remedy of a new trial or other relief is sufficient reparation in light of the countervailing public policies and considering the purpose and function of constitutional guaranties. (*Morgano* v. *Smith, supra*, 879 P.2d at p. 737, fn. 3; *Stevens* v. *Bispham, supra*, 851 P.2d at p. 563; *Bailey* v. *Tucker, supra*, 621 A.2d at p. 113; *Levine* v. *Kling, supra*, 123 F.3d at p. 582; cf. *Peeler* v. *Hughes & Luce, supra*, 909 S.W.2d at p. 498; cf. *Mylar* v. *Wilkinson, supra*, 435 So.2d at pp. 1238-1239.) Those courts analogizing to civil actions have not considered the implications of postconviction relief for ineffective assistance of counsel. (See *Stevens* v. *Bispham, supra*, 851 P.2d at p. 565.) Given that availability, it is inimical to sound public policy to afford a civil remedy, which in some cases would provide a further boon to defendants already evading just punishment on "legal technicalities." (Cf. *Stone* v. *Powell* (1976) 428 U.S. 465 [96 S.Ct. 3037, 49 L.Ed.2d 1067] [no federal habeas corpus relief for Fourth Amendment violation fully and fairly litigated in state court].)

In contrast to the postconviction relief available to a criminal defendant, a civil matter lost through an attorney's negligence is lost forever. The litigant has no recourse other than a malpractice claim. The superficial comparison between civil and criminal malpractice is also faulty in other crucial respects. (See Kaus & Mallen, *supra*, 21 UCLA L.Rev. at pp. 1203-1204; Mallen, *Legal Malpractice and the Criminal Defense Lawyer* (Fall 1994) 9 Crim. Just. J. 2, 6, 54-55.) Tort damages are in most cases fungible in the sense that the plaintiff seeks in a malpractice action exactly what was lost through counsel's negligence: money. "Damages" in criminal malpractice are difficult to quantify under any circumstances. Calculating them when, for example, counsel's incompetence causes a longer sentence would be all the more perplexing. (See generally, Kaus & Mallen, *supra*, 21 UCLA L.Rev. at pp. 1221-1224.)

Tort law also operates on very different legal principles from the constitutionally reinforced and insulated criminal justice system. "Tort law provides damages only for harms to the plaintiff's legally protected interests, [citation], and the liberty of a guilty criminal is not one of them. The guilty criminal may be able to obtain an acquittal if he is skillfully represented, but he has no right to that result (just as he has no *right* to have the jury nullify the law, though juries sometimes do that), and the law provides no relief if the 'right' is denied him." (*Levine* v. *Kling, supra*, 123 F.3d at p. 582.) Moreover, "[t]he underpinnings of common law tort liability, compensation and deterrence, do not support a rule that allows recovery to one who is guilty of the underlying criminal charge. A person who is guilty need not be

compensated for what happened to him as a result of his former attorney's negligence. There is no reason to compensate such a person, rewarding him indirectly for his crime." (*Glenn* v. *Aiken, supra,* 569 N.E.2d at p. 788.)

Reinforcing this conclusion are the pragmatic difficulties that would arise from simply overlaying criminal malpractice actions with the civil malpractice template. In civil actions, carrying the burden on causation is relatively straightforward and comprehensible for the jury, even if it necessitates a "trial within a trial." The factual issues in the underlying action are resolved according to the same burden of proof, and the same evidentiary rules apply. Thus, it is reasonably possible for the malpractice jury to assess whether and to what extent counsel's professional lapse compromised a meritorious claim or defense. (See *Glenn* v. *Aiken, supra,* 569 N.E.2d at p. 787.)

By contrast, "the prospect of retrying a criminal prosecution [is] 'something one would not contemplate with equanimity . . . .' " (Kaus & Mallen, *supra,* 21 UCLA L.Rev. at p. 1202, fn. 30, quoting Lord Reid in *Rondel* v. *Worsley* (1969) 1 A.C. 191, 230.) The procedure outlined in *Shaw* v. *State, Dept. of Admin., supra,* 861 P.2d at page 573, suggests this estimation is not exaggerated: "[T]he standard of proof will be a complex one, in essence, a standard within a standard. [Plaintiff] must prove by a preponderance of the evidence that, but for the negligence of his attorney, the jury could not have found him guilty beyond a reasonable doubt." (See also *Fantazia* v. *County of Stanislaus* (1996) 41 Cal.App.4th 1444, 1454 [49 Cal.Rptr.2d 177]; *Glenn* v. *Aiken, supra,* 569 N.E.2d at pp. 787-788 [applying civil malpractice analogy, "defendant attorney would have to prove that his former client was guilty beyond a reasonable doubt"]; Kaus & Mallen, *supra,* 21 UCLA L.Rev. at p. 1202, fn. 30.) Moreover, while the plaintiff would be limited to evidence admissible in the criminal trial, the defendant attorney could introduce additional evidence, including "any and all confidential communications, as well as otherwise suppressible evidence of factual guilt." (*Bailey* v. *Tucker, supra,* 621 A.2d at p. 115, fn. 12; *Shaw* v. *State, Dept. of Admin., supra,* 861 P.2d at p. 573.) The mental gymnastics required to reach an intelligent verdict would be difficult to comprehend much less execute. (See also *Glenn* v. *Aiken, supra,* 569 N.E.2d at p. 788, fn. 8; Comment, *Criminal Malpractice: Threshold Barriers to Recovery Against Negligent Criminal Counsel* (1981) 1981 Duke L.J. 542, 561-562.) Avoiding such a procedure is also consistent with " 'a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction.' [Citation.]" (*Heck* v. *Humphrey* (1994) 512 U.S. 477, 484 [114 S.Ct. 2364, 2371, 129 L.Ed.2d 383] [holding malicious prosecution action requires termination of prior criminal proceeding in favor of accused].)

We would also anticipate attorneys might practice "defensive" law more frequently to insulate their trial court decisions. "[I]n our already overburdened system it behooves no one to encourage the additional expenditure

[of] resources merely to build a record against a potential malpractice claim." (*Bailey* v. *Tucker, supra*, 621 A.2d at p. 114.)

For the foregoing reasons, we hold that in a criminal malpractice action actual innocence is a necessary element of the plaintiff's cause of action. Therefore, on retrial Wiley will have to prove by a preponderance of the evidence that he did not commit battery with serious bodily injury.[4]

## DISPOSITION

We affirm the judgment of the Court of Appeal and remand to that court with directions to remand the cause to the superior court for further proceedings not inconsistent with this opinion.

George, C. J., Kennard, J., Baxter, J., and Chin, J., concurred.

**WERDEGAR, J.,** Concurring.—I agree with the majority that plaintiff's guilt or innocence of the 1990 battery is relevant to his malpractice claim and that the case must therefore be remanded for further proceedings. Accordingly, I concur in the judgment. I do not, however, agree with the majority's decision to add a new element to the tort of malpractice, nor do I agree with the method by which the majority reaches that decision.

The majority expresses concern that convicted criminals not be permitted to avoid the consequences of their crimes by recovering damages for legal malpractice. While the concern appears valid, for a court therefore simply to declare, as does the majority, that "[f]or reasons of policy and pragmatism" (maj. opn., *ante*, at p. 534), the law will now be changed, seems inappropriate. Society respects its high courts' decisions because it understands that someone must have the last word on difficult questions of law. A judicial decision that explicitly presents itself as a policy decision, rather than as a neutral application of existing legal principles, risks forfeiting that respect. One need not demand that judges be entirely uninfluenced by their personal

---

[4]Wiley contends he is entitled to a directed verdict on the question of innocence in light of his testimony he did not assault DiGiovanni and defendants' failure to present any contrary evidence. Although he alluded to it in his respondent's brief, the Court of Appeal did not address this contention; and the disposition was an unqualified reversal, which "ordinarily has the effect of remanding the cause for a new trial on all of the issues presented by the pleadings." (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 759, p. 784; *id.*, § 758, p. 783 [unqualified reversal "leave[s] the case 'at large' for further proceedings as if it had never been tried"].) In his rehearing petition, Wiley did not request that the court either expressly resolve the matter or at least qualify the reversal. Under these circumstances, we decline to consider the matter further (see Cal. Rules of Court, rule 29(b)(2)), although we note the trial court only directed a verdict Wiley was not guilty. The record contains no finding of innocence.

views on good social policy. But one can, and should, ask that judges be mindful of their duty to strive constantly to subordinate such views to more objective sources of law.

In this case, fortunately, the impact of the majority's peremptory method is likely to be limited. This is because the ordinary principles of tort law typically offer other paths to the conclusion that persons found guilty of crimes may not obtain damages from their defense attorneys. The doctrine of proximate cause, for example, generally makes it difficult or impossible for a person guilty of intentional criminal wrongdoing to show that any ensuing consequences can fairly be attributed to an attorney's negligent legal representation. (See, e.g., *Weiner* v. *Mitchell, Silberberg & Knupp* (1980) 114 Cal.App.3d 39, 48 [170 Cal.Rptr. 533], cited in maj. opn., *ante*, at p. 537.) As the majority itself acknowledges, "[i]n the criminal malpractice context . . . a defendant's own criminal act remains the ultimate source of his predicament . . . ." (Maj. opn., *ante*, at p. 540.) This being the case, it is unnecessary and, thus, all the more regrettable that the majority has chosen to announce its decision as one of "policy and pragmatism" rather than of law.

One problem with announcing a new, policy-based rule is that unintended consequences invariably follow. So it is here. Our court has in recent cases made it abundantly clear that we will strictly follow the statute that governs the accrual and limitation of claims for attorney malpractice. (Code Civ. Proc., § 340.6; see *Jordache Enterprises, Inc.* v. *Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739 [76 Cal.Rptr.2d 749, 958 P.2d 1062] (*Jordache*); *Adams* v. *Paul* (1995) 11 Cal.4th 583 [46 Cal.Rptr.2d 594, 904 P.2d 1205] (*Adams*).) Under this statute, an action against an attorney for a wrongful act or omission must ordinarily be commenced within one year after the plaintiff discovers, or should have discovered, the facts constituting the wrongful act or omission. In view of the time required to decide appeals and petitions for habeas corpus in criminal cases, the statute of limitations in most cases likely will run long before the convicted person has a chance to have the conviction set aside and, thus, remove the bar (collateral estoppel) to establishing his or her actual innocence. The majority alludes to this problem, but offers no solution. (Maj. opn., *ante*, at p. 536, fn. 2.) Indeed, I see no ready solution, considering that we have soundly condemned all nonstatutory tolling rules (see *Jordache*, *supra*, 18 Cal.4th at pp. 755-758), including our own prior effort to redefine the element of "damages" so as to prevent the accrual of a cause of action for malpractice until all related lawsuits that might undo the harm caused by the malpractice have concluded (see *ITT Small Business Finance Corp.* v. *Niles* (1994) 9 Cal.4th 245 [36 Cal.Rptr.2d 552, 885 P.2d 965], limited in *Adams*, *supra*, 11 Cal.4th at p. 588, and

overruled in *Jordache, supra,* 18 Cal.4th at p. 763). How, without undoing *Jordache* and *Adams,* might we hold that a cause of action for criminal malpractice does not accrue until the underlying conviction is set aside?

Another problem with rules of law that spring to life full-grown from the mind of policy, rather than by evolving through the ordinary process of the common law, is that they tend not to be well articulated. That is the case here. What, precisely, is "actual innocence"? The majority does not tell us. If a criminal defendant, for example, is convicted of two different crimes, must he or she prove innocence of both, even if the alleged legal malpractice affected only one of the convictions? Must a convicted malpractice plaintiff prove innocence of all related offenses that *might* have been charged, or only of those that were charged or necessarily included in those that were? Should the plaintiff's ability to recover for malpractice depend on the fortuities of prosecutorial charging discretion? The answer to these questions is far from obvious. ·

The common law of torts, as articulated by successive generations of judges, typically has enough depth and subtlety to do justice in unusual cases. To turn our backs on this collective wisdom by adopting a rule apparently designed to cut off whole categories of litigation seems ill-advised. It is not beyond imagination that a particular defendant's offense might be so insignificant, and the attorney's malpractice so egregious, that reasonable jurors instructed on the relevant principles of tort law might well conclude the latter was in fact a proximate cause of some of the ensuing consequences. The majority's new rule seems to foreclose such possibilities.

In conclusion, although I share the majority's intuition that a guilty person ordinarily should not be able to recover damages based on a defense attorney's malpractice, I do not agree that it is either necessary or desirable to remake the law to conform to our own views of good policy. Rather, we would do better to ask whether any legitimate policy concerns already find expression in existing principles of tort law and, if so, to leave the law alone.

**MOSK, J.,** Dissenting.—As the majority acknowledge, the usual elements of a legal malpractice cause of action are: "(1) the duty of the attorney to use such skill, prudence and diligence as members of the profession commonly possess; (2) a breach of that duty; (3) a proximate causal connection between the breach and the resulting injury; and (4) actual loss or damage." (*Schultz* v. *Harney* (1994) 27 Cal.App.4th 1611, 1621 [33 Cal.Rptr.2d 276].) The majority add the element of "actual innocence" in criminal malpractice cases. In effect, the majority hold that a defense attorney owes no duty cognizable in tort to act competently toward a client he or she knows to be

guilty of a crime of which the client is charged. I decline to join the majority for reasons stated in the Court of Appeal opinion, set forth below.[1]

"First, as recognized by the court in [*Glenn* v. *Aiken* (1991) 409 Mass. 699 [569 N.E.2d 783, 787, 4 A.L.R.5th 1060], fn. omitted], it is 'difficult to defend logically a rule that requires proof of innocence as a condition of recovery, especially if a clear act of negligence of defense counsel was obviously the cause of the defendant's conviction of a crime.' [Citation.] For example, where the attorney fails to seek to suppress evidence seized in clear violation of his client's constitutional rights, a bright line rule would preclude the guilty client from recovering damages for the malpractice. Similarly, the rule would preclude recovery where the client was incarcerated after his attorney failed to communicate the prosecutor's offer to dismiss charges against him in exchange for testimony against another of that attorney's clients. (Cf. *Krahn* v. *Kinney* [(1989) 43 Ohio St.3d 103], 538 N.E.2d 1058.) In such instances, requiring proof of innocence would have the effect of 'just about destroy[ing] criminal malpractice as an actionable tort in the very type of situation where the lawyer's incompetence is most flagrant and its consequences most easily demonstrable.' (Kaus & Mallen, *The Misguiding Hand of Counsel—Reflections on "Criminal Malpractice"* [(1974)] 21 UCLA L.Rev. 1191, 1205.)

"Second, the rule is clearly intended to create a separate standard for clients represented in a criminal setting. However, it is precisely in this setting that the state and federal Constitutions guarantee *effective* assistance of counsel. (Cal. Const., art. I, § 15; U.S. Const., 6th Amend.; *People* v. *Ledesma* [(1987) 43 Cal.3d 171,] 215 [233 Cal.Rptr. 404, 729 P.2d 839]; *Strickland* v. *Washington* [(1984)] 466 U.S. [668,] 684-685 [104 S.Ct. at pp. 2062-2063].) A rule relieving criminal defense counsel from liability for harm resulting from his clear negligence is fundamentally incompatible with this constitutionally guaranteed right.

"While the court in *Glenn* believed that the possibility the client is innocent will act as a sufficient deterrent to negligent conduct by defense counsel in criminal cases, we are not aware of any evidence to support this proposition. Even if such a deterrent effect could be established, it is difficult to accept that the client who has suffered loss of personal liberty as a result of his counsel's negligence must make a more onerous showing to recover for those losses than his civil counterpart, whose losses are purely monetary.

---

[1] Brackets together in this manner [], without enclosed material, are used to denote deletions from the opinion of the Court of Appeal; brackets enclosing material are used to denote additions. The Court of Appeal's footnotes are omitted.

"Third, while [] the public has an interest in encouraging representation of criminal defendants, [] this [is not] a valid policy reason to support the imposition of an 'actual innocence' requirement in the absence of any empirical evidence suggesting that the threat of malpractice claims, as defined by the traditional elements, has deterred public defenders or retained counsel from representing criminal defendants.

"Finally, the rule creates rather artificial distinctions between public defenders and retained criminal defense attorneys, on one hand, and civil attorneys on the other. []

"For these reasons, we [should not] alter the traditional elements of a malpractice cause of action for claims arising out of criminal proceedings."

To the analysis provided in the Court of Appeal opinion, I would add two additional reflections. First, since *Weiner* v. *Mitchell, Silberburg & Knupp* (1980) 114 Cal.App.3d 39 [170 Cal.Rptr. 533], it has been the rule in the state that a criminal defendant must obtain postconviction relief before pursuing a malpractice action. It is also noteworthy that proving ineffective assistance of counsel in order to obtain such relief, and for purposes of proving criminal malpractice liability, is very difficult. When considering a trial counsel's performance in an ineffective assistance claim, we "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." (*Strickland* v. *Washington* (1984) 466 U.S. 668, 689 [104 S.Ct. 2052, 2065, 80 L.Ed.2d 674].) This stringent rule will screen out frivolous malpractice claims. There is no need for the actual innocence requirement to further limit these claims.

Second, this case does not present the question whether public defenders should be immune from malpractice suits under Government Code section 820.2, which grants immunity to public officials for discretionary acts. Thus, I do not address the appropriate outcome of this case were that question presented.

For all of the foregoing, I would affirm the judgment of the Court of Appeal.