Filed 10/2/14  Davis v. Dwyer CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| SOLOMON MORRIS DAVIS, | B249118 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC492572) |
| v. | |
| JOHN PATRICK DWYER, | |
| Defendant and Respondent. | |


APPEAL from a judgment of the Superior Court of Los Angeles County, Michelle R. Rosenblatt, Judge.  Affirmed.

Solomon Morris Davis, in pro. per., for Plaintiff and Appellant.

Charlston, Revich & Wollitz and Tim Harris for Defendant and Respondent.

Representing himself, plaintiff Solomon Morris Davis sued his former attorney, John Patrick Dwyer, for legal malpractice allegedly committed in an underlying criminal action. The trial court sustained Dwyer's demurrer to the first amended complaint without leave to amend on the grounds that Davis had not shown "actual innocence," and his action was time-barred. On appeal, Davis contends that he was not required to show "actual innocence" prior to suing his attorney for malpractice, or, in the alternative, that he had met this requirement. Davis also argues that his causes of action were not time-barred. We disagree and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Underlying Conviction*

In March 2005, Davis was convicted of 29 counts of conspiracy, insurance fraud, tax evasion, money laundering, and perjury based on evidence Davis had recruited individuals to stage automobile accidents on the 405 freeway and then collected insurance payments for their "injuries." Davis was sentenced to 12 years in state prison and ordered to pay restitution in the amount of $1,655,375 to the various defrauded insurance companies, the Franchise Tax Board, and the Department of Insurance.

Davis appealed from his sentence and the restitution order, and Dwyer was appointed to represent Davis on appeal on November 28, 2007. On appeal, Dwyer challenged the consecutive sentences imposed by the trial court and the restitution awarded to the Department of Insurance on the ground that the Department of Insurance was not a "direct victim" of Davis's fraud. Dwyer did not challenge other aspects of the restitution order. Before the appeal was fully briefed, on October 8, 2008, Davis filed,

2

in pro per., a petition for writ of habeas corpus in conjunction with his direct appeal, complaining that Dwyer provided ineffective assistance of counsel on appeal by failing to address certain issues, including the entire restitution award. On May 13, 2009, the Court of Appeal held that restitution was not properly awarded to the Department of Insurance because the Department of Insurance was not a "direct victim" of the crime as required by Penal Code section 1202.4,[1] and otherwise affirmed the judgment. (*People v. Davis* (May 13, 2009, B203571) [nonpub. opn.] (*Davis I*).) It separately denied Davis's petition for writ of habeas corpus.

2.    *Habeas Corpus Petitions*

While serving his prison sentence, Davis filed various habeas corpus petitions. On June 15, 2010, while in prison, Davis filed a petition in which he argued that Dwyer had provided "ineffective assistance" through "fail[ing] to raise the issue of insufficiency of evidence" in "support [of the] restitution judg[]ment." Davis claimed that Dwyer said he had not challenged the restitution award to various insurance companies because "the records/clerk's transcripts of the [] hearing [we]re not available to be transcribed due to a disk failure . . . ." However, Davis argued that appellate

---

[1]    Penal Code section 1202.4 provides in relevant part: "In every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court. . . . " (Penal Code, § 1202.4, subd. (f).) "For purposes of this section, 'victim' shall include . . . [¶] . . . [¶] . . . government, governmental subdivision, agency, or instrumentality . . . when that entity is a *direct victim* of a crime." (Penal Code, § 1202.4, subd. (k), italics added.) Because the restitution ordered to the Department of Insurance was for investigative costs, the appellate court found the Department of Insurance was not a "direct victim." (*Davis I, supra,* at p. 7.)

3

attorneys for a criminal defendant are obligated to "reconstruct" any portions of the oral proceedings that "cannot be transcribed," and if a record of "the oral proceedings [is] unavailable, it [is] necessary to attempt to settle the record by applying to the trial court for permission to prepare a settled statement." Davis further argued that Dwyer "fail[ed] to make [such] an application to the trial court to settle the record" and thereby provided Davis with ineffective assistance.

The trial court found that Davis's habeas corpus petition "would have this court adjudicate 'newly presented grounds for relief which were known to the petitioner at the time of' " his prior habeas corpus petitions. "Any failure on the part of appellate counsel would have been patent at least as early as May 13, 2009 when the petitioner's direct appeal was denied in the court of appeal." The trial court further held that Davis had not shown any prejudice from Dwyer's failure to raise certain claims on appeal because Davis "actually presented [those] claims" in a "petition for writ of habeas corpus with the court of appeal in conjunction with his direct appeal," and the Court of Appeal had "found [those claims] without merit." The petition was denied.

3.      *The Instant Case*

Davis was released from prison on September 21, 2010. On September 21, 2012, Davis filed the instant action for legal malpractice against Dwyer. Around this same time, Davis also filed a motion in the criminal action to "modify restitution," which was heard by the trial court on September 28, 2012.[2] At oral argument, Davis argued that he was "not able to appeal the restitution [order] because there is no record." The trial

---

[2]      The moving papers are not included in the record on appeal.

4

court responded, "that's not really true.  You could have come in and done a settled statement of facts and there is a procedure for that and it's done all the time. . . . "  The court denied Davis's motion.

On November 21, 2012, Davis filed a first amended complaint in the legal malpractice action, asserting causes of action for negligence and "conscious disregard."  In the first cause of action, Davis alleged that Dwyer had "failed to exercise reasonable care" while representing him, "causing [him] to have been wrongfully convicted of crimes in 2005, incarcerated in state prison from 2005 until September 21, 2010, and to have sustained an unlawful court order for indirect victim restitution."  In the second cause of action, Davis alleged that Dwyer had failed to challenge the restitution ordered as to the insurance companies and the Franchise Tax Board.

Dwyer demurred on the grounds that (1) an individual convicted of a criminal offense must first prove "actual innocence" prior to suing his criminal attorney for malpractice, and (2) Davis's claims are time-barred because the one-year statute of limitations was tolled only while Davis was in prison and Davis did not file his complaint until two years after his release.

In opposition, Davis argued that he had satisfied the "actual innocence" requirement because the Court of Appeal had reversed the restitution award at least with respect to the Department of Insurance.  In the alternative, Davis argued that the "actual innocence" requirement does not apply to this case.  With respect to the statute of limitations argument, Davis argued that he did not know, until the trial court told him on September 28, 2012, that Dwyer could have challenged the entire restitution award by

5

obtaining a settled statement and thus he did not have notice of Dwyer's misconduct, and the statute did not begin to run, until that date.

The court sustained the demurrer without leave to amend on the grounds that "(1) [Davis's] complaint is barred by [his] inability to prove actual innocence and (2) [his] allegations are barred by the statute of limitations in CCP §340.6, even after the allowance for tolling under CCP §352.1." Davis timely appealed.

## CONTENTIONS

Davis contends that he was not required to show "actual innocence" prior to suing his attorney for malpractice, or, in the alternative, that he had met this requirement. Davis also argues that his claims were not time-barred.

## DISCUSSION

1. *Standard of Review*

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend . . . the reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] . . . [I]t is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment." (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966-967.)

2. *Davis Was Required to Show "Actual Innocence"*

Although the first amended complaint alleged causes of action for "negligence" and "conscious disregard," the gravamen of both claims is legal malpractice as the

6

primary right at issue is the right to competent representation. (See *Bird, Marella, Boxer & Wolpert v. Superior Court* (2003) 106 Cal.App.4th 419, 427 ["the nature of a cause of action does not depend on the label the plaintiff gives it or the relief the plaintiff seeks but on the primary right involved"].)

When a former criminal defendant sues his attorney for legal malpractice, the defendant's actual innocence of the underlying criminal charges is a necessary element of the malpractice cause of action. (*Wiley v. County of San Diego* (1998) 19 Cal.4th 532 (*Wiley*).) "[A]n individual convicted of a criminal offense must obtain reversal of his or her conviction, or other exoneration by postconviction relief, in order to establish actual innocence in a criminal malpractice action." (*Coscia v. McKenna & Cuneo* (2001) 25 Cal.4th 1194, 1201 (*Coscia*).)

The rationale for this rule is as follows: " ' "[P]ermitting a convicted criminal to pursue a legal malpractice claim without requiring proof of innocence would allow the criminal to profit by his own fraud, or to take advantage of his own wrong, or to found [a] claim upon his iniquity, or to acquire property by his own crime. As such, it is against public policy for the suit to continue in that it 'would indeed shock the public conscience, engender disrespect for courts and generally discredit the administration of justice.' " [Citations.]' " (*Wiley, supra,* 19 Cal.4th at p. 537.) Further, the *Wiley* court noted "[a] person who is guilty need not be compensated for what happened to him as a result of his former attorney's negligence. There is no reason to compensate such a person, rewarding him indirectly for his crime. . . . [¶] [A]llowing civil recovery for convicts impermissibly shifts responsibility for the crime away from the convict. This

7

opportunity to shift much if not all, of the punishment assessed against convicts for their criminal acts to their former attorneys, drastically diminishes the consequences of the convict's criminal conduct, and seriously undermines our system of criminal justice." (*Id.* at p. 537-544.)

Here, Davis contends that he satisfied the "actual innocence" requirement because the Court of Appeal vacated the restitution award with respect to the Department of Insurance.  However, Davis has not shown that he is innocent of his conviction for conspiracy, insurance fraud, tax evasion, money laundering, and perjury. That a portion of the restitution order was vacated, on the technical ground that the Department of Insurance was not a "direct victim" of Davis's crimes, does not exonerate Davis of any of those crimes.  Therefore, Davis did not establish his actual innocence, nor does he contend that he could amend his complaint to do so.

In the alternative, Davis argues that he is not required to show actual innocence because the policy reasons underlying the rule do not apply here.  However, we need not analyze such policy considerations because Davis's malpractice claims fall squarely within the Supreme Court's definition of claims for "criminal malpractice" to which the actual innocence rule applies.[3]

---

[3]    The court in *Brooks v. Shemaria* (2006) 144 Cal.App.4th 434 (*Brooks*), relied on by Davis, analyzed the policy considerations underlying the actual innocence requirement in order to resolve a dispute between the parties regarding whether a post-conviction return of property hearing was criminal or civil in nature and therefore whether the actual innocence requirement applied.  As we discuss, that analysis is unnecessary here because representing a defendant on the direct appeal of his conviction and sentence is clearly a *criminal* proceeding, to which the actual innocence requirement applies.

Davis is suing Dwyer for malpractice allegedly committed while Dwyer was representing him on appeal from his conviction and the restitution award. In *Wiley,* the Supreme Court held that the actual innocence requirement applies to claims for "criminal malpractice" which the Court defined as " ' "legal malpractice in the course of defending a client accused of crime." [Citation.]' " (*Wiley, supra,* 19 Cal.4th at p. 536, fn. 1.) In *Coscia,* the Supreme Court characterized its holding in *Wiley* as applying to any "legal malpractice case arising out of a criminal proceeding." (*Coscia, supra,* 25 Cal.4th at p. 1200.) Counsel's representation of a criminal defendant on appeal from the conviction certainly "aris[es] out of a criminal proceeding." (See *Redante v. Yockelson* (2003) 112 Cal.App.4th 1351, 1357-1358 [applying the actual innocence requirement to a criminal defendant's suit against his former appointed appellate defense counsel for malpractice].) Accordingly, we agree with Dwyer that actual innocence is a prerequisite to Davis's suit and the trial court correctly sustained the demurrer on that ground.

3. *The Complaint Was Time-Barred*

Davis's claims for legal malpractice fail on the additional ground that they were time-barred. Code of Civil Procedure section 340.6 constitutes the statute of limitations for legal malpractice claims. It provides that "[a]n action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or

9

omission, whichever occurs first." (Code Civ. Proc., § 340.6.) "Under [Code of Civil Procedure] section 340.6, the one-year limitations period commences when the plaintiff actually or constructively discovers the facts of the wrongful act or omission . . . . " (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 751.) Code of Civil Procedure section 352.1 allows tolling of a limitations period for the "disability" of imprisonment.

Davis argues that the limitations period did not commence until the hearing on his motion to "modify restitution" on September 28, 2012, because he only then discovered, or through reasonable diligence could have discovered, the facts underlying his malpractice claims, namely, that he could have used a "settled statement of facts" as a record on appeal instead of a court reporter's transcript. Davis contends that Dwyer had previously concealed this from him. Specifically, Davis claims that Dwyer told him "[t]here was nothing contained in the record on appeal to support [Davis's] claim that the restitution orders [] were illegal," and that, from this statement, Davis believed that the restitution award could not be challenged as to the Franchise Tax Board and the "victim" insurance companies without a court reporter's transcript of the hearing at which the order was made.[4]

The argument that Davis did not have actual knowledge of Dwyer's alleged malpractice until the September 28, 2012 hearing is belied by the record. First, Davis

---

[4]     In fact, Dwyer's statement does not reasonably lead to such a conclusion. That Dwyer said there was "nothing . . . in the record" to support further challenge to the restitution order indicates that he believed there was no evidence in the record showing that the restitution order was erroneous.

filed his complaint in this action one week *before* the hearing at which the judge told Davis he could have used a settled statement to support his appeal.

Moreover, the record establishes that Davis knew the facts underlying Dwyer's alleged malpractice well before the hearing on the motion to "modify restitution." In June 2010, Davis argued in a habeas corpus petition that Dwyer had provided "ineffective assistance" to him based on the following: (1) appellate counsel for a criminal defendant is obligated to "reconstruct" any portions of the oral proceedings that "cannot be transcribed," (2) if a record of "the oral proceedings [is] unavailable, it [is] necessary to attempt to settle the record by applying to the trial court for permission to prepare a settled statement," and (3) Dwyer had "fail[ed] to make an application to the trial court to settle the record." Accordingly, Davis was aware, at the very least by June 2010, of all the facts underlying his claim for legal malpractice: that Dwyer could have requested a settled statement from the trial court in lieu of relying on a court reporter's transcript of the restitution hearing. The statute of limitations was triggered by that knowledge.

After Davis discovered the facts constituting Dwyer's alleged malpractice, the limitations period was then tolled pursuant to Code of Civil Procedure section 352.1 until Davis was released from prison on September 21, 2010. Davis had a year from that date to file his claims for legal malpractice under Code of Civil Procedure section 340.6; however, he filed the underlying action two years from that date. Accordingly, the trial court correctly found that his claims were time-barred.

11

4.    *The Trial Court Did Not Abuse Its Discretion In Denying Leave to Amend*

Generally it is an abuse of discretion for the trial court to sustain a demurrer without leave to amend where there is any reasonable possibility that the plaintiff can state a valid cause of action.  (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349.)  However, where a proposed amendment would be futile, the trial court is justified in denying leave to amend.  (*Kiang v. Strycula* (1965) 231 Cal.App.2d 809, 812.)  " 'Leave to amend should be denied where the facts are not in dispute and the nature of the claim is clear, but no liability exists under substantive law.'  [Citation]" (*Jenkins v. JP Morgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 535.)

Although Davis argues he should be entitled to amend, he fails to explain how he could cure the flaws in his first amended complaint.  "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived.  [Citations.]" (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785.)

In any event, amendment here would have been futile.  Davis's claim is that Dwyer failed to represent him competently while handling his direct appeal.  The case law is clear that Davis is prohibited from suing Dwyer unless he can allege actual innocence (which he cannot), and no amendment will change that.  In addition, all of Davis's claims are barred by the one-year statute of limitations.  By 2010, Davis asserted that Dwyer had failed to address the necessary issues on appeal, had failed to obtain a settled record to use on appeal, and that no competent lawyer would have acted as he did.  At the latest, the statute of limitations started running when Davis was

12

released from prison on September 21, 2010 and expired in 2011, a full year before the action was filed. The demurrer was therefore properly sustained without leave to amend.

## *DISPOSITION*

The judgment is affirmed. Dwyer is awarded his costs on appeal.

## *NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS*

EDMON, J.[*]

WE CONCUR:

KITCHING, Acting P. J.

ALDRICH, J.

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.