[No. B187434. Second Dist., Div. One. Oct. 30, 2006.]

JOHN S. BROOKS, Plaintiff and Appellant, v.
JOSEPH SHEMARIA, Defendant and Respondent.

**COUNSEL**

John S. Brooks, in pro. per., for Plaintiff and Appellant.

John Schlanger for Defendant and Respondent.

**OPINION**

**ROTHSCHILD, J.**—Convicted criminal defendant John S. Brooks appeals from the judgment entered in favor of his former attorney, Joseph Shemaria, on Brooks's complaint for breach of contract and professional negligence. The trial court granted summary judgment on the ground that, in order to prevail, Brooks had to prove he was actually innocent of the crime of which he was convicted. We conclude that the actual innocence requirement does not apply to Brooks's claims, because his contract claim is merely a fee dispute, and his professional negligence claim relates only to proceedings concerning the return of seized property. We therefore reverse.

## BACKGROUND[1]

This appeal arises from Brooks's civil lawsuit against his privately retained criminal defense counsel, Shemaria. The record before us does not indicate all of the charges and special allegations against Brooks, but it does show that

---

[1] Because Brooks appeals from the summary judgment against him, we view the evidence in the light most favorable to Brooks, liberally construing his evidentiary showing and strictly construing Shemaria's. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768 [107 Cal.Rptr.2d 617, 23 P.3d 1143].)

on June 26, 2002, Brooks pleaded no contest to a single charge of manufacture of a controlled substance, in violation of Health and Safety Code section 11379.6, subdivision (a), and admitted a single special allegation of transportation, sale, or distribution of a controlled substance, in violation of Health and Safety Code section 11379, subdivision (a)(2). On that basis, the court sentenced Brooks to 10 years in prison. The conviction and sentence have not been reversed or vacated.

Brooks first met with Shemaria on April 14, 2001. In that meeting, Shemaria told Brooks that he would require a retainer of $50,000, which would cover both the cost of representing Brooks through trial and the cost of seeking the return of Brooks's seized property. Shemaria further advised Brooks that any unused portion of the $50,000 retainer would be returned.

Brooks met with Shemaria again on April 17, 2001, but their meeting was cut short by an emergency lockdown at the jail. As the meeting came suddenly to an end, Shemaria took a retainer agreement out of his briefcase and asked Brooks to sign it. Brooks was reluctant to do so because he had not read it. Shemaria encouraged him to sign it anyway, saying that it could easily be modified later, and Brooks complied. When Brooks read the agreement later he found that it did not reflect all of the provisions he had discussed with Shemaria on April 14. Brooks subsequently spoke with Shemaria, and they orally modified the written agreement to include all of the provisions that Shemaria had described on April 14, including that any unused portion of the $50,000 retainer would be returned.

The record contains no written retainer agreement executed by Brooks. The record does contain a retainer agreement that purports to be between Shemaria and Brooks, but the agreement is executed by Shemaria alone. That agreement does not provide for the return of unused fees, but it also does not prohibit oral modification of the agreement.

On June 26, 2002, Brooks entered his no contest plea and was sentenced. On July 1, 2003, the superior court heard Brooks's motion for the return of his personal property that had been seized by the authorities. The court ordered that "all paperwork, except the instructions for making methamphetamine, is to be returned to [Brooks]." The court also ordered the destruction of all seized firearms except for one that belonged to Linda Jean Brooks, whose relation to Brooks was not specified. On July 24, 2003, the court

modified the order concerning disposition of the firearms by also exempting from destruction a firearm belonging to Brooks's sister, Susan Livingston. The court further stated that it would "reconsider the order to destroy the remainder of the firearms" on September 8, 2003. On September 8, the matter was continued to September 23. Shemaria appeared on behalf of Brooks at the July 24 and September 8 hearings.

But on September 23, no attorneys appeared, including Shemaria. The court consequently took the motion for reconsideration of its order concerning destruction of the firearms off calendar. And at a subsequent hearing on October 9, 2003, Shemaria again failed to appear on behalf of Brooks. Again, because no attorneys appeared, Brooks's motion for reconsideration was taken off calendar. Moreover, because no one ever picked up the property that had been ordered returned, all of the seized property was destroyed.

Also, on August 13, 2003, the Ventura County Sheriff wrote to Brooks at his last known address to inform him that he could retrieve certain items of seized property, including various financial records, a computer and electronic storage media, a cell phone, and a pager. (There is no indication that any of this property overlaps with the "paperwork" that the superior court had previously ordered returned to Brooks; the court's order was expressly directed only to the Los Angeles Police Department, not the Ventura County Sheriff.) The sheriff's letter was returned because, unbeknownst to the sheriff, Brooks was no longer at that address, as a result of his incarceration. When the letter was returned, the sheriff "disposed of" the property.

On December 24, 2003, Brooks filed suit in propria persona against Shemaria, alleging claims for breach of contract, rescission, and professional negligence. Brooks alleged that Shemaria breached the retainer agreement by refusing to refund unused portions of the retainer and also failed to exercise reasonable diligence and competence in seeking the return of Brooks's seized property.

Shemaria moved for summary judgment on the grounds that (1) Brooks could not prevail on his claims unless he proved both that his conviction had been reversed or vacated and that he was actually innocent, and (2) it was undisputed that Brooks could not prove either of those elements. The trial court agreed, granted the motion, and entered judgment in favor of Shemaria. Brooks timely appealed.

## STANDARD OF REVIEW

"Because plaintiffs appealed from the trial court's order granting defendants summary judgment, we independently examine the record in order to determine whether triable issues of fact exist to reinstate the action." (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142 [12 Cal.Rptr.3d 615, 88 P.3d 517].)

## DISCUSSION

I.   The Actual Innocence Requirement Does Not Apply to Brooks's Contract Claim for the Return of Unused Fees.

Brooks argues that the actual innocence requirement does not apply to his claim for the refund of unused portions of the $50,000 retainer, so the trial court erred when it granted Shemaria's motion for summary judgment as to that claim. We agree.

In order to carry his initial burden on his motion for summary judgment, Shemaria was required to show that one or more elements of Brooks's claims could not be established, or that there was a complete defense to those claims. (Code Civ. Proc., § 437c, subd. (p)(2).) Shemaria's sole argument was that actual innocence was an element of all of Brooks's claims, and that it was undisputed that Brooks could not establish actual innocence. We conclude that Shemaria did not carry his initial burden with respect to Brooks's claim for the refund of unused portions of the retainer, because actual innocence is not an element of that claim. (*Bird, Marella, Boxer & Wolpert v. Superior Court* (2003) 106 Cal.App.4th 419, 432 [130 Cal.Rptr.2d 782] (hereafter *Bird*).)

In *Wiley v. County of San Diego* (1998) 19 Cal.4th 532, 534 [79 Cal.Rptr.2d 672, 966 P.2d 983] (hereafter *Wiley*), the Supreme Court held that when a criminal defendant sues his or her attorney for legal malpractice, the defendant's actual innocence of the underlying criminal charges is an element of the malpractice cause of action. In *Coscia v. McKenna & Cuneo* (2001) 25 Cal.4th 1194, 1201 [108 Cal.Rptr.2d 471, 25 P.3d 670] (hereafter *Coscia*), the court further held that in order to establish actual innocence, a convicted criminal defendant "must obtain reversal of his or her conviction, or other exoneration by postconviction relief . . . ."

In *Lynch v. Warwick* (2002) 95 Cal.App.4th 267 [115 Cal.Rptr.2d 391] (hereafter *Lynch*), the Court of Appeal applied *Wiley* and *Coscia* to a convicted criminal defendant's suit against his former attorney for legal malpractice, breach of contract, and breach of fiduciary duty. (*Id.* at p. 269.)

The court concluded that the actual innocence requirement applied to *all* of the plaintiff's claims because even the claims for breach of contract and breach of fiduciary duty were, in substance, claims for legal malpractice—all of the claims sought recovery on the basis of the attorney's allegedly inadequate representation in the criminal proceedings. (*Id.* at pp. 273–274.)

■ But in *Bird*, the Court of Appeal held that the actual innocence requirement did not apply to a fee dispute between a criminal defendant and his former attorney, because such a claim is not a disguised malpractice action. (*Bird*, 106 Cal.App.4th at p. 427.) The court followed *Lynch* in reasoning that "the nature of a cause of action does not depend on the label the plaintiff gives it or the relief the plaintiff seeks but on the primary right involved." (*Ibid.*) The primary right at issue in *Lynch* was the right to competent legal representation, so *Lynch* was a malpractice case, regardless of the labels the plaintiff used for his claims. But in *Bird*, the primary rights at issue were the plaintiff's "right to be billed in accordance with the terms of the retainer agreement and the right not to be subjected to unconscionable, fraudulent or otherwise unlawful billing practices." (*Ibid.*) The case was therefore distinguishable from *Lynch* and did not fall within the rule of *Wiley* and *Coscia*. Moreover, after surveying the policy considerations underlying the actual innocence requirement, the court determined that there was no justification for extending the requirement to fee disputes. (*Id.* at pp. 427–432.) The court concluded that "in a suit by a convicted criminal defendant client against his or her attorney to enforce the primary rights to be billed in accordance with the retainer agreement and to be free from unethical or fraudulent billing practices on the part of defense counsel the client is not required to allege and prove actual innocence of the charged crimes or postconviction exoneration." (*Id.* at p. 432.)

*Bird* applies straightforwardly to Brooks's claim for the return of unused portions of the $50,000 retainer. The primary right Brooks seeks to vindicate is the right to be billed in accordance with the terms of the retainer agreement, i.e., to have Shemaria's compensation governed by those terms. It has nothing to do with the quality of Shemaria's representation or with Brooks's guilt or innocence. The actual innocence requirement therefore does not apply.

Shemaria's attempts to distinguish *Bird* are unavailing. Shemaria contends that *Bird* created a "fraudulent billing scheme" exception to the actual innocence requirement, and he argues that the exception does not apply here because there is no evidence that he "ever sent [Brooks] a single billing

statement, much less a fraudulent billing statement." The argument fails because it is based on an insupportably narrow reading of *Bird*. The court's holding in *Bird* was expressly based on the primary right at issue, not on the existence or nonexistence of billing statements. If the plaintiff seeks only to vindicate the primary right to have the attorney's compensation governed by the terms of the retainer agreement, then the actual innocence requirement does not apply.

We also note that Shemaria appears to rely on the fact that the written retainer agreement in the record does not provide for the return of any portion of the $50,000 retainer. Such reliance is misplaced for two reasons. First, the retainer agreement is not executed by Brooks. Second, that retainer agreement does not prohibit oral modification, and Brooks has introduced evidence that his written retainer agreement with Shemaria was orally modified to provide for the refund of any unused portions of the $50,000 retainer. Thus, even if the retainer agreement in the record is an unexecuted copy of the agreement that Brooks signed, there are still disputed issues of material fact concerning whether or not the retainer agreement was modified. Those disputes cannot be resolved against Brooks on summary judgment.

For all of these reasons, we conclude that the actual innocence requirement does not apply to Brooks's claim for a refund of unused portions of the retainer. The trial court therefore erred when it granted summary judgment on that claim.

## II. The Actual Innocence Requirement Does Not Apply to Brooks's Professional Negligence Claim Concerning the Return of Seized Property.

Brooks further argues that the actual innocence requirement does not apply to his claim that Shemaria failed to exercise reasonable competence and diligence in seeking the return of Brooks's seized property. We agree.

Brooks argues that because the return of property proceedings took place after the court entered judgment upon Brooks's conviction and sentence, those proceedings were civil, not criminal, so the actual innocence rule of *Wiley* and *Coscia* does not apply. In response, Shemaria argues that the return of property proceedings were part of the criminal proceedings because they concerned property seized pursuant to a valid search warrant and took place in the criminal court that convicted and sentenced Brooks, among other reasons.

■ Under *Wiley*, the actual innocence requirement applies to claims for "criminal malpractice," which the Supreme Court defined as " ' "legal malpractice *in the course of defending* a client accused of crime." . . .' [Citation.]" (*Wiley, supra,* 19 Cal.4th at p. 536, fn. 1, italics added.) That formulation of the scope of the requirement favors Brooks, because Shemaria's representation of Brooks after the trial court entered judgment was not undertaken "in the course of defending" Brooks—apart from the possibility of seeking a certificate of probable cause in order to appeal, the defense ended with the entry of judgment.

■ In *Coscia*, however, the Supreme Court characterized its holding in *Wiley* as applying to any "legal malpractice case *arising out of a criminal proceeding.*" (*Coscia, supra,* 25 Cal.4th at p. 1200, italics added.) That formulation favors Shemaria, because the return of property proceedings (and hence Brooks's professional negligence claim) did arise out of a criminal proceeding—they took place in the same court and as part of the same case in which Brooks was convicted and sentenced.

■ We conclude that the issue of whether the actual innocence rule applies in the present context should not be resolved in a formulaic manner, either by labeling the return of property proceedings "criminal" or "civil" (the parties' approach), by determining whether they took place in the course of Shemaria's defense of Brooks (as suggested by *Wiley*), or by deciding whether Brooks's professional negligence claim arises out of a criminal proceeding (as suggested by *Coscia*). Rather, we must look to the policy considerations underlying the actual innocence requirement to see whether they justify application of the requirement here. We conclude they do not.

The relevant considerations, as explained in *Wiley*, include the following: First, we should not permit a guilty defendant to profit from his or her own wrong. (*Wiley, supra,* 19 Cal.4th at p. 537.) Second, to allow guilty defendants to shift their punishment to their former attorneys would undermine the criminal justice system. (*Ibid.*) Third, "a defendant's own criminal act remains the ultimate source of his predicament irrespective of counsel's subsequent negligence." (*Id.* at p. 540.) Fourth, a guilty defendant who is convicted or given a longer sentence as a result of counsel's incompetence can obtain postconviction relief on that basis; in contrast, "a civil matter lost through an attorney's negligence is lost forever." (*Id.* at pp. 542–543.) Fifth, there are formidable practical problems with criminal malpractice litigation, including the difficulty of quantifying damages and the complexity of the

standard of proof, which must combine the preponderance of the evidence standard with the reasonable doubt standard applicable in a criminal trial. (*Id.* at pp. 543–544.)

None of those considerations weigh in favor of applying the actual innocence requirement in the instant case. In his professional negligence claim concerning the return of property proceedings, Brooks does not seek to profit from his own wrong, even assuming, as we must, that Brooks actually committed the crime of which he was convicted. The property Brooks wanted returned, and which allegedly was lost through Shemaria's dereliction, was Brooks's property already. Brooks would not *profit* by merely regaining possession of what was already his, or by obtaining damages if the failure to regain possession was caused by Shemaria's lack of reasonable care.

For similar reasons, Brooks's claim does not seek to shift Brooks's own responsibility or punishment to Shemaria. Brooks does not challenge his conviction or sentence or seek damages for either of them. Rather, he seeks damages for the destruction of property that both the trial court and the sheriff determined should have been returned, not destroyed. And even if Brooks's criminal conduct is in some sense "the ultimate source of his predicament" (*Wiley, supra,* 19 Cal.4th at p. 540) (e.g., it is undoubtedly a but-for cause of the loss of his property), the court's and the sheriff's determinations that the property *should* have been returned strongly suggest that Brooks's criminal conduct was *not* the proximate cause of the property's destruction.

Moreover, there is no form of postconviction redress for the wrongs Brooks alleges. On the contrary, once Brooks's property was destroyed, it was "lost forever." (*Wiley, supra,* 19 Cal.4th at p. 543.)

Finally, Brooks's claim does not face the practical problems described by the Supreme Court. Quantifying damages will be a relatively straightforward matter of determining the value of the property that was lost as a result of Shemaria's alleged negligence. And there will be no need to weave together different standards of proof, because the reasonable doubt standard did not apply in the return of property proceedings at issue.

In sum, we are aware of no policy consideration that supports application of the actual innocence requirement here. We therefore conclude that it does not apply, so the trial court erred when it granted summary judgment on Brooks's claim for professional negligence concerning the return of property proceedings.

## DISPOSITION

The judgment is reversed. Appellant shall recover his costs on appeal.

Mallano, Acting P. J., and Vogel, J., concurred.