[No. B231779. Second Dist., Div. Four. Nov. 15, 2011.]

BAHMAN KHODAYARI, Plaintiff and Appellant, v.
CHARLES MASHBURN, Defendant and Respondent.

---

COUNSEL

Bahman Khodayari, in pro. per., for Plaintiff and Appellant.

Klinedinst, Heather L. Rosing, Talia E. Shandling and Leah A. Plaskin for Defendant and Respondent.

---

OPINION

WILLHITE, Acting P. J.—Representing himself, appellant Bahman Khodayari sued Charles Mashburn, his former criminal defense attorney in victim restitution and related probation violation proceedings, for legal malpractice and several other claims. While represented by different counsel, appellant had been convicted of four counts of misdemeanor grand theft and three counts of misdemeanor insurance fraud, placed on summary probation, and ordered to pay restitution. In the postconviction proceedings in which respondent represented him, appellant was found in violation of probation for failing to cooperate with the financial evaluator in assessing his ability to pay restitution and for failing to pay restitution. In his instant civil suit against respondent, he alleged that respondent's deficient representation caused him to be found in violation of probation. As a result, he was incarcerated longer than was necessary, and respondent, without appellant's consent, induced appellant's brother to pay restitution on appellant's behalf, falsely representing that the payment would not be distributed to the victims pending appellant's appeal from his criminal convictions. Appellant seeks damages for emotional distress and lost income resulting from his incarceration, and damages for the restitution paid by his brother, who is now demanding repayment from appellant.

 The trial court sustained respondent's demurrer to appellant's complaint without leave to amend and dismissed the case. In this appeal by appellant, we conclude that all of appellant's causes of action sound in legal malpractice. We hold that the policy rationale of the actual innocence requirement (*Wiley v. County of San Diego* (1998) 19 Cal.4th 532 [79 Cal.Rptr.2d 672, 966 P.2d 983] (*Wiley*); *Coscia v. McKenna & Cuneo* (2001) 25 Cal.4th 1194 [108 Cal.Rptr.2d 471, 25 P.3d 670] (*Coscia*)) mandates that

appellant show actual innocence of the probation violations allegedly resulting from respondent's malpractice, and also obtain postviolation exoneration of those violations. Because appellant did not comply with these requirements, the trial court properly sustained the demurrer. However, appellant's appeal from the probation violations is still pending, and therefore, under *Coscia, supra,* 25 Cal.4th at pages 1210–1211, the remedy is to stay the malpractice action "during the period in which [appellant] timely and diligently pursues postconviction remedies."

## FACTUAL AND PROCEDURAL BACKGROUND

*Appellant's Civil Complaint*

An investigation by the Bureau of Automotive Repair into appellant's business, State Auto Body & Paint Center, revealed that appellant had, among other things, inflated the cost of repairs, charged for repairs that were not made, and refused to release vehicles when payments were not made for unauthorized repairs. Based on the investigation, criminal charges were filed, and a jury convicted appellant of four counts of misdemeanor grand theft and three counts of misdemeanor insurance fraud. He was placed on 36 months of summary probation, ordered to serve 365 days in county jail, and ordered to pay approximately $10,057 in restitution to four individual victims and approximately $15,000 in restitution to two insurance company victims. In September 2009, the criminal trial court referred appellant to a financial evaluator to determine his ability to pay restitution, and ordered him to cooperate.

Throughout the criminal proceedings, appellant was represented by several different attorneys, both appointed and retained. Respondent was appointed to represent appellant in postconviction matters relating to alleged violations of probation for refusing to pay restitution and refusing to cooperate with the financial evaluator in determining his ability to pay.

The operative pleading is appellant's first amended complaint (the complaint). Appellant purported to allege causes of action for professional negligence, fraud, intentional misrepresentation, concealment, deceit, constructive fraud, negligent misrepresentation, negligence, breach of fiduciary duty, intentional infliction of emotional distress, abuse of process, breach of contract, breach of the implied covenant of good faith and fair dealing, and violations of Business and Professions Code section 17200. The claims were supported by the following allegations.

In August 2008, appellant appealed from the judgment of conviction in the underlying criminal case. Respondent was appointed to represent appellant in November 2008. Respondent told appellant that he did not have time to spend on appellant's case because he had more important cases to work on. Appellant repeatedly asked respondent "to review critical documents and

evidence that demonstrated that restitution was not owed to various alleged victims and also that the amounts [of restitution] the prosecution could prove . . . were incorrect," but respondent never informed the court that appellant contested the amount of restitution and failed to meet with him to prepare for restitution hearings. Although appellant did not believe he owed restitution, from November 1, 2009, into December 2009, he repeatedly told respondent that he could make small restitution payments ($50) as a gesture of good faith.

On November 10, 2009, the court remanded appellant into custody for failure to cooperate with the financial evaluator. Thereafter, without appellant's authorization or consent, respondent and the prosecutor induced appellant's brother to pay the restitution, and assured his brother that any payment he made would be "held in safekeeping" in an account of the City of Los Angeles pending the appeal of appellant's case. At a December 2 probation violation hearing, respondent failed to inform the court that appellant was willing to make small restitution payments and improperly told the court that his brother had volunteered to pay the restitution.

Appellant attached to his complaint a declaration from his brother, stating that respondent and the prosecutor had asked him to pay more than $25,000 in restitution for appellant. Appellant's brother wrote that he "delivered the check" to respondent in the courtroom on December 15, 2009, but the money was not kept in a "government account," as allegedly promised by respondent and the prosecutor. According to the complaint, appellant's brother delivered a check for $10,057.16 at a December 15, 2009 court hearing, and, despite the representation that the funds would be "held in safekeeping" pending appellant's appeal from the judgment of conviction, the funds were instead distributed directly to the victims. Appellant alleged that his brother has repeatedly demanded repayment from appellant.

Appellant claimed that because of respondent's conduct, the proceedings regarding restitution were unnecessarily delayed, appellant was found to be in violation of probation for failing to cooperate with the financial evaluator, and he was forced to remain in custody longer than would otherwise have been required. Appellant alleged that as a result of remaining in custody, he suffered emotional distress damages of $250,000 and lost income of $48,000. For all but his claim under Business and Professions Code section 17200, he sought damages for these sums, plus the sum of $10,057.16, the amount his brother paid in restitution, as well as punitive damages. For his claim under Business and Professions Code section 17200, he sought "disgorgement" of any funds "paid to [respondent] by any source in consideration" for representing appellant.

*Respondent's Demurrer*

Respondent filed a demurrer and motion to strike portions of the complaint. Along with the demurrer, he submitted records from the underlying criminal proceedings, and asked the court to take judicial notice of the records. In the demurrer, respondent argued, among other things, that the demurrer must be sustained because appellant was unable to establish actual innocence of the underlying charges and probation violations and did not obtain postconviction relief. The trial court sustained the demurrer without leave to amend as to all the causes of action, but did not state specific reasons.

## DISCUSSION

" ' " 'On appeal from an order of dismissal after an order sustaining a demurrer, our standard of review is de novo, i.e., we exercise our independent judgment about whether the complaint states a cause of action as a matter of law.' " ' [Citation.] In reviewing the complaint, we must assume the truth of all facts properly pleaded by the plaintiff and matters properly judicially noticed. [Citation.] However, we 'do not assume the truth of contentions, deductions, or conclusions of fact or law and may disregard allegations that are contrary to the law or to a fact which may be judicially noticed.' [Citation.]" (*Haro v. City of Solana Beach* (2011) 195 Cal.App.4th 542, 549 [124 Cal.Rptr.3d 615].)

■ When a former criminal defendant sues his or her attorney for legal malpractice resulting in conviction, the former defendant's actual innocence of the underlying criminal charges is a necessary element of the cause of action. (*Wiley, supra*, 19 Cal.4th 532.) Moreover, the "plaintiff must obtain postconviction relief in the form of a final disposition of the underlying criminal case—for example, by acquittal after retrial, reversal on appeal with directions to dismiss the charges, reversal followed by the People's refusal to continue the prosecution, or a grant of habeas corpus relief—as a prerequisite to proving actual innocence in a malpractice action against former criminal defense counsel." (*Coscia, supra*, 25 Cal.4th at p. 1205.) Hereafter in our opinion, when we refer to the actual innocence requirement, we mean to refer to both these elements: actual innocence of the convictions and postconviction relief from the convictions.

As we explain below, we conclude that (1) all appellant's causes of action are based on alleged legal malpractice resulting in appellant being found in violation of probation, which in turn caused the harm for which he seeks compensation—his incarceration and the restitution payment his brother made on his behalf for which the brother now seeks repayment; (2) the policy rationale of the actual innocence requirement mandates that appellant show

actual innocence of the probation violations, and obtain postviolation exoneration; (3) because appellant did not comply with these requirements, the demurrer was properly sustained; and (4) because appellant's appeal from the probation violations is still pending, the remedy is to stay this action while appellant timely and diligently pursues postconviction remedies.

*Appellant's Causes of Action*

██ Appellant purported to allege not simply a claim for legal malpractice arising from the restitution and probation violation proceedings at which respondent represented him, but also claims for fraud, intentional misrepresentation, concealment, deceit, constructive fraud, negligent misrepresentation, negligence, breach of fiduciary duty, intentional infliction of emotional distress, abuse of process, breach of contract, breach of the implied covenant of good faith and fair dealing, and violations of Business and Professions Code section 17200. However, "the nature of a cause of action does not depend on the label the plaintiff gives it or the relief the plaintiff seeks but on the primary right involved." (*Bird, Marella, Boxer & Wolpert v. Superior Court* (2003) 106 Cal.App.4th 419, 427 [130 Cal.Rptr.2d 782] (*Bird*).) Here, it is clear that the primary right involved in all of appellant's claims is "the right to competent legal representation" (*ibid.*), and thus, for application of the actual innocence requirement, all are properly characterized as claims for legal malpractice.

In our analysis, we find the decision in *Lynch v. Warwick* (2002) 95 Cal.App.4th 267 [115 Cal.Rptr.2d 391] (*Lynch*) helpful. There, the plaintiff, after pleading guilty to charges on the advice of subsequent counsel, sued his first privately retained attorney, alleging that he had failed to interview witnesses, failed to prevent the loss or destruction of evidence, and otherwise failed to prepare for trial. (*Id.* at pp. 269–270.) The defendant labeled his alleged causes of action legal malpractice, breach of contract, and breach of fiduciary duty. (*Id.* at p. 270.)

On appeal from a grant of summary judgment, the court noted that despite the labels, "[a]ll three causes of action seek damages (attorney fees paid either to Warwick [(the first attorney)] or to the attorney hired to replace Warwick) based on Warwick's negligent or inadequate representation and, thus, while titled differently, all three causes of action seek recovery for legal malpractice." (*Lynch, supra*, 95 Cal.App.4th at p. 270, fn. 1.) The court concluded that the actual innocence requirement (innocence of the underlying convictions) applied, because all the claims related to the alleged loss of a meritorious defense to the charges. Indeed, even as to the "claimed damages for having to retain a second attorney (who advised him to plead guilty), guilt or innocence would be at issue since if Lynch [(the plaintiff)] were guilty, lacked any meritorious defenses, or was reasonably advised by Warwick to

plead guilty, it could not be said that Warwick was the cause of Lynch's incurring the expense of a second attorney. Rather, the cause of the additional expense would have been Lynch's failure to earlier plead guilty as advised by Warwick." (*Id.* at p. 273.)

Further, although the plaintiff sought "a contractual-type damage (out-of-pocket expenses for attorney fees) and label[ed] [one of] his cause[s] of action as a breach of contract," he was "actually seeking recovery on a tort theory for Warwick's negligence, i.e., Lynch is seeking recovery for legal malpractice" (*Lynch, supra*, 95 Cal.App.4th at p. 273) and proof of the claim would involve proof of his guilt or innocence of the underlying charges (*id.* at p. 274; cf. *Bird, supra*, 106 Cal.App.4th at pp. 427–428 [distinguishing *Lynch*, holding that the actual innocence requirement did not apply where plaintiff sued his former criminal attorneys for breach of contract, fraud, breach of fiduciary duty, and money had and received based on allegations not related to the quality of representation in the criminal trial, but on allegations of unethical and fraudulent billing practices such as "not performing the work they claimed they performed, not incurring the costs they claimed they incurred, not using paralegals to perform tasks when appropriate, not confining bills for travel costs to out-of-town travel"]).

In the instant case, although appellant gives various labels to his causes of action, the alleged facts supporting the claims show that all of them are based on legal malpractice, the primary right being the right to competent representation in the proceedings involving restitution and the related probation violations. (See *Bird, supra*, 106 Cal.App.4th at p. 427.)

As alleged in his complaint, appellant was found in violation of probation for not cooperating with the financial evaluator and not timely paying restitution. His complaint alleges that respondent's deficient performance in the restitution and probation violation proceedings caused the court to find him in violation of probation, resulting in his being incarcerated longer than was necessary. For that incarceration, he seeks damages for emotional distress and lost income caused by the incarceration. Insofar as his claims are based on these allegations, the primary right sought to be vindicated is the right to competent representation in the restitution and probation violation proceedings.

Similarly, appellant alleges that in the course of representing him, while appellant was in custody on the probation violation matters, respondent induced appellant's brother to pay restitution on appellant's behalf, without appellant's permission, and did not inform the court that appellant was willing to make small installment payments. Because his brother is demanding that appellant repay the $10,057.16 restitution payment—a payment not

kept in a "government account" as purportedly promised, but rather distributed to the victims—appellant seeks that sum in damages. Again, regardless of the various labels appellant gives his claims, to the extent the claims are based on these allegations, the primary right is the right to competent representation, in particular, competent representation in seeking appellant's release from custody by arranging payment of appellant's restitution obligation to his victims.

Finally, for the claim under Business and Professions Code section 17200 alone, appellant seeks "disgorgement" of funds "paid to [respondent] by any source in consideration" for representing appellant. The entitlement to such "disgorgement" is premised on respondent's alleged deficiencies in representing appellant in the restitution and probation violation proceedings.

In short, all of appellant's claims are based on legal malpractice that allegedly resulted in his being found in violation of probation, and he seeks compensation for the consequences of those violations (damages for his incarceration and for his brother's restitution payment) as well as "disgorgement" of fees paid by any third party to respondent based on respondent's allegedly deficient performance.

*Actual Innocence*

Having determined that all of appellant's claims are premised on attorney malpractice, we now consider whether the actual innocence requirement applies to these claims.

As we have noted, "in a criminal malpractice action actual innocence [of the underlying criminal charges] is a necessary element of the plaintiff's cause of action." (*Wiley, supra,* 19 Cal.4th at p. 545; see *Coscia, supra,* 25 Cal.4th at p. 1197.) In addition, "an individual convicted of a criminal offense must obtain reversal of his or her conviction, or other exoneration by postconviction relief, in order to establish actual innocence in a criminal malpractice action." (*Coscia, supra,* 25 Cal.4th at p. 1201.)

■ In determining whether and to what extent the actual innocence requirement applies to this case, the analysis in *Brooks v. Shemaria* (2006) 144 Cal.App.4th 434 [50 Cal.Rptr.3d 430] (*Brooks*) is instructive. In *Brooks,* the court considered whether the actual innocence requirement applied to a claim for professional negligence arising from an attorney's representation in proceedings for a return of seized property, which occurred after judgment on the defendant's conviction and sentence. (*Id.* at p. 441.) The court noted that "[u]nder *Wiley,* the actual innocence requirement applies to claims for 'criminal malpractice,' which the Supreme Court defined as ' " 'legal malpractice *in the course of defending* a client accused of crime.' . . ."

[Citation.]' [Citation.]" (*Id.* at p. 442.) But the court also observed that "[i]n *Coscia* . . . , the Supreme Court characterized its holding in *Wiley* as applying to any 'legal malpractice case *arising out of a criminal proceeding.*' [Citation.]" (*Ibid.*)

The court in *Brooks* reasoned that "the issue of whether the actual innocence rule applies . . . should not be resolved in a formulaic manner, either by labeling the return of property proceedings 'criminal' or 'civil' (the parties' approach), by determining whether they took place in the course of [the attorney's] defense of [the defendant] (as suggested by *Wiley*), or by deciding whether [the defendant's] professional negligence claim arises out of a criminal proceeding (as suggested by *Coscia*). Rather, we must look to the policy considerations underlying the actual innocence requirement to see whether they justify application of the requirement here." (*Brooks, supra,* 144 Cal.App.4th at p. 442.)

As articulated in *Brooks,* those policy considerations are as follows. "First, we should not permit a guilty defendant to profit from his or her own wrong. [Citation.] Second, to allow guilty defendants to shift their punishment to their former attorneys would undermine the criminal justice system. [Citation.] Third, 'a defendant's own criminal act remains the ultimate source of his predicament irrespective of counsel's subsequent negligence.' [Citation.] Fourth, a guilty defendant who is convicted or given a longer sentence as a result of counsel's incompetence can obtain postconviction relief on that basis; in contrast, 'a civil matter lost through an attorney's negligence is lost forever.' [Citation.] Fifth, there are formidable practical problems with criminal malpractice litigation, including the difficulty of quantifying damages and the complexity of the standard of proof, which must combine the preponderance of the evidence standard with the reasonable doubt standard applicable in a criminal trial. [Citation.]" (*Brooks, supra,* 144 Cal.App.4th at pp. 442–443.)

In *Brooks,* the court concluded that "[n]one of those considerations weigh in favor of applying the actual innocence requirement . . . . In his professional negligence claim concerning the return of property proceedings, Brooks does not seek to profit from his own wrong, even assuming, as we must, that Brooks actually committed the crime of which he was convicted. The property Brooks wanted returned, and which allegedly was lost through Shemaria's dereliction, was Brooks's property already. Brooks would not *profit* by merely regaining possession of what was already his, or by obtaining damages if the failure to regain possession was caused by Shemaria's lack of reasonable care. [¶] For similar reasons, Brooks's claim does not seek to shift Brooks's own responsibility or punishment to Shemaria. Brooks does not challenge his conviction or sentence or seek damages for either of

them. Rather, he seeks damages for the destruction of property that both the trial court and the sheriff determined should have been returned, not destroyed. And even if Brooks's criminal conduct is in some sense 'the ultimate source of his predicament' [citation] (e.g., it is undoubtedly a but-for cause of the loss of his property), the court's and the sheriff's determinations that the property *should* have been returned strongly suggest that Brooks's criminal conduct was *not* the proximate cause of the property's destruction. [¶] Moreover, there is no form of postconviction redress for the wrongs Brooks alleges. On the contrary, once Brooks's property was destroyed, it was 'lost forever.' [Citation.] [¶] Finally, Brooks's claim does not face the practical problems described by the Supreme Court. Quantifying damages will be a relatively straightforward matter of determining the value of the property that was lost as a result of Shemaria's alleged negligence. And there will be no need to weave together different standards of proof, because the reasonable doubt standard did not apply in the return of property proceedings at issue. [¶] In sum, we are aware of no policy consideration that supports application of the actual innocence requirement here." (*Brooks, supra,* 144 Cal.App.4th at p. 443.)

In the instant case, unlike *Brooks,* the policy reasons underlying the actual innocence requirement apply, though with a twist, because the proceedings at issue are restitution and probation violation matters. In large part, the requirement that a former criminal defendant show actual innocence of his *crimes* and obtain postconviction relief is premised on the notion that the attorney's alleged negligence resulted in *conviction.* As stated in *Coscia,* quoting *Wiley, supra,* 19 Cal.4th at page 539: " 'Only an innocent person *wrongly convicted due to inadequate representation* has suffered a compensable injury because in that situation the nexus between the malpractice and palpable harm is sufficient to warrant a civil action.' " (*Coscia, supra,* 25 Cal.4th at p. 1200, italics added.) But respondent's alleged legal malpractice did not occur in appellant's trial, and appellant was not wrongly convicted as a result of that malpractice. Rather, the alleged malpractice occurred in postconviction proceedings regarding restitution and related probation violations, and resulted in appellant being found in violation of probation. In these circumstances, whether appellant is actually innocent of his crimes, and has obtained postconviction exoneration of his convictions, has no relation to the harm for which he seeks compensation—his incarceration and his brother's restitution payment that resulted from his probation violations. However, as we explain, because the policy reasons behind the actual innocence requirement apply to appellant's claims based on legal malpractice at the restitution and probation violation proceeding, we conclude that appellant must show actual innocence of his probation violations and postviolation exoneration.

The first policy consideration supporting the actual innocence requirement is that "we should not permit a guilty defendant to profit from his or her own

wrong." (*Brooks, supra*, 144 Cal.App.4th at p. 442.) In the present case, as alleged in his complaint, appellant was found in violation of probation for not cooperating with the financial evaluator and not timely paying restitution. He is seeking compensation for the consequences of his own failure to comply with the conditions of his probation, that harm being his incarceration and his brother's payment of appellant's unpaid restitution obligation, without appellant's consent. Thus, appellant seeks to profit from his own wrongdoing while on probation.

The second policy consideration is that "to allow guilty defendants to shift their punishment to their former attorneys would undermine the criminal justice system." (*Brooks, supra*, 144 Cal.App.4th at p. 442.) In other words, the " 'opportunity to shift much, if not all, of the punishment assessed against convicts for their criminal acts to their former attorneys, drastically diminishes the consequences of the convicts' criminal conduct and seriously undermines our system of criminal justice. [Citation.]' [Citations.] '[I]f plaintiffs engaged in the criminal conduct they are accused of, then they alone should bear full responsibility for the consequences of their acts, including imprisonment. Any subsequent negligent conduct by a plaintiff's attorney is superseded by the greater culpability of the plaintiff's criminal conduct. [Citation.]' " (*Wiley, supra*, 19 Cal.4th at pp. 537–538.) This policy clearly applies—appellant impermissibly seeks to shift to his attorney the blame for the probation violations, which resulted in appellant's incarceration and his brother's restitution payment, even though the attorney's alleged negligence is superseded by appellant's culpability in failing to cooperate with the financial evaluator and failing to pay any restitution to the victims of his crimes.

The third policy consideration—" 'a defendant's own criminal act remains the ultimate source of his predicament irrespective of counsel's subsequent negligence' "—also applies. (*Brooks, supra*, 144 Cal.App.4th at p. 442.) The ultimate source of appellant's predicament is not his attorney's supposed deficiencies, but appellant's own conduct in failing to cooperate with the financial evaluator and in failing to pay restitution. "Any harm suffered [by appellant] is *not* 'only because of' [alleged] attorney error but principally due to the client's antecedent criminality." (*Wiley, supra*, 19 Cal.4th at p. 540.)

The fourth policy reason is that "a guilty defendant who is convicted or given a longer sentence as a result of counsel's incompetence can obtain postconviction relief on that basis; in contrast, 'a civil matter lost through an attorney's negligence is lost forever.' [Citation.]" (*Brooks, supra*, 144 Cal.App.4th at p. 442.) Here, appellant had a postprobation violation remedy by appeal. (See *People v. Robinson* (1954) 43 Cal.2d 143, 145–146 [271 P.2d 872]; *People v. Gilchrist* (1982) 133 Cal.App.3d 38, 42, fn. 1 [183 Cal.Rptr.

709]; see Pen. Code, § 1237, subd. (a) [defining appealable judgment in part as "[a] sentence, [or] an order granting probation"].) Indeed, after reinstatement on probation following his brother's restitution payment, appellant did appeal the probation violations to the Appellate Division of the Los Angeles Superior Court. Respondent has asked us to take judicial notice of, among other documents, appellant's opening brief filed on February 22, 2011, and the respondent's brief, filed on April 4, 2011, in that appeal. We grant the request. (Evid. Code, § 452, subd. (d).)[1] The record before us, however, does not show the result of that appeal.

The fifth policy consideration is that "there are formidable practical problems with criminal malpractice litigation, including the difficulty of quantifying damages and the complexity of the standard of proof, which must combine the preponderance of the evidence standard with the reasonable doubt standard applicable in a criminal trial." (*Brooks, supra,* 144 Cal.App.4th at pp. 442–443.) Here, it is true the standard of proof in probation violation proceedings is the same as that in civil proceedings—preponderance of the evidence—but there are nonetheless difficulties in assessing the damages appellant seeks for his prolonged incarceration. As *Wiley* stated, "Tort damages are in most cases fungible in the sense that the plaintiff seeks in a malpractice action exactly what was lost through counsel's negligence: money. 'Damages' in criminal malpractice are difficult to quantify under any circumstances. Calculating them when, for example, *counsel's incompetence causes a longer sentence would be all the more perplexing.* [Citation.]" (*Wiley, supra,* 19 Cal.4th at p. 543, italics added.) Here, appellant seeks damages in part for being kept in custody longer than would have been necessary absent respondent's alleged negligence—precisely the type of damages *Wiley* found problematic.

Based on the policies supporting the actual innocence requirement as applied to this case, we conclude that as an element of all of his claims (each of which sounds in legal malpractice in the proceedings regarding restitution and related probation violations), appellant must plead actual innocence of his probation violations and must obtain postviolation exoneration.

*The Demurrer and Leave to Amend*

Because appellant failed to allege his actual innocence of his probation violations, i.e., facts showing that he timely paid restitution and fully cooperated with the financial evaluator, and also made no showing that he obtained postviolation exoneration, the demurrer to all his causes of action

---

[1] We initially denied the request for judicial notice, without prejudice. Now seeing the relevance of the documents, we grant it.

was properly sustained. At oral argument, the parties agreed that appellant's appeal from the probation violation is still pending. That being so, the proper remedy under *Coscia, supra,* 25 Cal.4th at pages 1210–1211, is to "stay the malpractice action during the period in which . . . plaintiff timely and diligently pursues postconviction remedies." We therefore remand the case to the trial court with orders to stay the action.

## DISPOSITION

The judgment is affirmed insofar as the demurrer was sustained. It is reversed insofar as leave to amend was denied. The case is remanded to the trial court with a direction to stay the action during the period within which appellant diligently pursues postconviction remedies. Respondent is to recover costs on appeal.

Manella, J., and Suzukawa, J., concurred.

A petition for a rehearing was denied December 7, 2011, and January 3, 2012, and on November 22, 2011, and December 7, 2011, the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied February 22, 2012, S199447.