Filed 3/20/13  Turner v. Hall CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| STEPHEN B. TURNER,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>JEFFERY S. HALL et al.,<br><br>        Defendants and Respondents. | A135943, A137034<br><br>(Alameda County<br>Super. Ct. No. RG11571707) |

## I. INTRODUCTION

In this consolidated proceeding, appellant appeals in pro per from the judgment following the trial court's order sustaining, without leave to amend, respondents' demurrer to appellant's second amended complaint.  The complaint alleged legal malpractice regarding respondent Hall's representation of appellant in parole revocation proceedings.  Appellant also appeals from the trial court's order denying his motion to strike respondent's memorandum of costs.  We affirm both the judgment and the order denying appellant's motion to strike costs.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Appellant is a parolee from the California state prison system, having been released from Avenal State Prison in January 2010.  He had been imprisoned for, apparently, indecent exposure and other sexual related offenses and, in 2006, had been required to register as a sex offender under Proposition 83, aka "Jessica's Law."

On April 6, 2010, appellant was taken into custody by the Parole Department for allegedly violating conditions of his parole.  Shortly thereafter, on April 21, 2010,

1

appellant met and retained respondent Hall (hereafter Hall)[1] as his attorney to represent him in the ensuing probable cause probation revocation hearing, a hearing which commenced the following day and involved six allegations of parole violations. At that hearing, the Deputy Commissioner found that there was probable cause that appellant had violated some terms and conditions of his parole and ordered a revocation hearing.

That hearing took place on May 4, 2010, at the Santa Rita County Jail in Dublin, with Hall again representing appellant. At that hearing, which allegedly lasted over three hours, Turner alleges that he personally raised the issue that, prior to the April 22 hearing, he had discovered that the material he had been furnished by the authorities was missing a document listing his special conditions of probation. He further alleged that, although he had asked Hall to raise that issue at the preliminary hearing, Hall had not done so. In any event, at the revocation hearing, the presiding Deputy Commissioner overruled appellant's objection, found appellant guilty of four parole violations, and sentenced him to nine months of incarceration, albeit eligible for half-time credit.

The record provided us by appellant is not clear regarding whether appellant served any of this time. But, whether or not he did, on February 11, 2011, he was charged with yet another parole violation. A hearing on that charge was held on March 2, 2011, with Hall again representing appellant. This was so notwithstanding appellant's contention (noted in his second amended complaint) that Hall had not responded to appellant's several attempts to contact him during mid-2010 regarding getting a declaration from Hall to support appellant's attempt to secure a writ of habeas corpus to overturn the May 2010 revocation and sentence ordered by the Deputy Commissioner. In any event, at the March 2, 2011, hearing appellant agreed to a "stipulated plea bargain of four months incarceration eligible for half-time credit" and was released from the Santa Rita jail "on or about April 12, 2011."

---

[1] Appellant's action was brought against respondent Hall individually and "The Law Office of Jeffrey S. Hall, A Professional Law Corporation," an office allegedly located in Pleasant Hill, Contra Costa County. We shall, hereafter, refer to both respondents simply as "Hall."

Shortly thereafter, per appellant's second amended complaint, he performed some "legal research" which disclosed that Hall had erred in not informing the Deputy Commissioner who presided over his first probable cause hearing that his "missing Special Conditions of Parole represented a serious *Valdivia* violation[2] and [that] the appropriate remedy for such a serious violation required immediate dismissal of [appellant's] parole-violation charges."

As a result, on April 19, 2011, appellant filed his original complaint against Hall, alleging 10 causes of action, mainly charging legal malpractice. According to Hall's brief to this court,[3] he filed a demurrer and motion to strike, and on September 29, 2011, the trial court issued an order sustaining the demurrer. Also per Hall's appellate brief, appellant then filed a first amended complaint on November 7, 2011, to which Hall filed another demurrer and motion to strike. On March 8, 2012, the trial court issued an order sustaining Hall's demurrer.

On March 12, 2012, appellant filed a second amended complaint against Hall. It contained a lengthy statement of facts and then asserted nine causes of action, including allegations of legal malpractice, ineffective assistance of counsel, intentional and negligent infliction of emotional distress, breach of fiduciary duty, negligence per se, gross negligence, malice, and aiding and abetting a deprivation of due process. Although no date is supplied us by either party, Hall filed a demurrer to this complaint, also.

On June 26, 2012, the trial court heard oral argument in the case and took the matter under submission. On June 28, it issued an order sustaining Hall's demurrer

---

[2] Presumably referring to *Valdivia v. Davis* (E.D.Cal. 2002) 206 F.Supp.2d 1068.

[3] Curiously, Hall's brief to us contains no citations to the only record provided us, the clerk's transcript, nor did his counsel provide any other record, i.e., an appendix, with any additional factual material. Thus, our only record in this case is that clerk's transcript, which contains only appellant's first and last complaints and the trial court's relevant orders, but nothing regarding Hall's filings. However, regarding the trial court proceedings subsequent to the filing of appellant's original complaint, appellant does not contest any of the statements made in Hall's brief to us regarding the parties' 2011 and 2012 filings in the superior court. We shall, therefore, rely upon some of those statements' recitations herein.

3

without leave to amend. In that order, the trial court specifically noted that appellant had been given "several opportunities to amend" but had still "failed to state [any] cause of action against Defendants."

Appellant filed a timely notice of appeal on July 10, 2012.

Three days later, on July 13, 2012, Hall filed a memorandum of costs seeking $1,680 in costs incurred. On July 19, 2012, appellant filed, again in pro per, a motion to strike that memorandum of costs. Hall filed an opposition to this motion, to which appellant responded.

On October 9, 2012, the trial court denied appellant's motion to strike Hall's memorandum of costs and, two days later, entered a judgment of dismissal of appellant's action against Hall.

Appellant filed a timely notice of appeal from this judgment on November 1, 2012.

### III. DISCUSSION

Under the governing law, it is clear that we must affirm the trial court's orders and the resulting judgment in favor of Hall. Such is made clear by a case cited and relied upon in Hall's brief to us, but not referenced at all in either of appellant's briefs, i.e., *Khodayari v. Mashburn* (2011) 200 Cal.App.4th 1184 (*Khodayari*). That case also involved essentially a legal malpractice action against a criminal defense attorney in which the plaintiff alleged that the defendant's deficient representation of him caused him to be found in violation of probation. Relying upon two decisions of our Supreme Court, the appellate court concluded "that all of appellant's causes of action sound in legal malpractice. We hold that the policy rationale of the actual innocence requirement (*Wiley v. County of San Diego* (1998) 19 Cal.4th 532 (*Wiley*); *Coscia v. McKenna & Cuneo* (2001) 25 Cal.4th 1194 (*Coscia*)) mandates that appellant show actual innocence of the probation violations allegedly resulting from respondent's malpractice, and also obtain postviolation exoneration of those violations. Because appellant did not comply with these requirements, the trial court properly sustained the demurrer." (*Khodayari*, *supra,* 200 Cal.App.4th at pp. 1186-1187.)

4

The *Khodayari* court went on to note the rationale of the two cited Supreme Court decisions: "When a former criminal defendant sues his or her attorney for legal malpractice resulting in conviction, the former defendant's actual innocence of the underlying criminal charges is a necessary element of the cause of action. (*Wiley, supra*, 19 Cal.4th 532.) Moreover, the 'plaintiff must obtain postconviction relief in the form of a final disposition of the underlying criminal case—for example, by acquittal after retrial, reversal on appeal with directions to dismiss the charges, reversal followed by the People's refusal to continue the prosecution, or a grant of habeas corpus relief—as a prerequisite to proving actual innocence in a malpractice action against former criminal defense counsel.' (*Coscia, supra*, 25 Cal.4th at p. 1205.)" (*Khodayari, supra,* 200 Cal.App.4th at p. 1189.)

The *Khodayari* court went on to examine both the several causes of action of the plaintiff's complaint against his former criminal defense attorney and whether the "actual innocence requirement" applied to those claims. It then summed up its conclusions thusly: "[W]e conclude that (1) all appellant's causes of action are based on alleged legal malpractice resulting in appellant being found in violation of probation, which in turn caused the harm for which he seeks compensation—his incarceration and the restitution payment his brother made on his behalf for which the brother now seeks repayment; (2) the policy rationale of the actual innocence requirement mandates that appellant show actual innocence of the probation violations, and obtain postviolation exoneration; (3) because appellant did not comply with these requirements, the demurrer was properly sustained; and (4) because appellant's appeal from the probation violations is still pending, the remedy is to stay this action while appellant timely and diligently pursues postconviction remedies." (*Khodayari, supra,* 200 Cal.App.4th at pp. 1189-1190.)

With regard to the first issue, i.e., the nature of the causes of action asserted by that appellant against his former attorney, the *Khodayari* court noted that they included "not simply a claim for legal malpractice arising from the restitution and probation violation proceedings at which respondent represented him, but also claims for fraud, intentional misrepresentation, concealment, deceit, constructive fraud, intentional

misrepresentation, negligence, breach of fiduciary duty, intentional infliction of emotional distress, abuse of process, breach of contract, breach of the implied covenant of good faith and fair dealing, and violations of Business and Professions Code section 17200. However, 'the nature of a cause of action does not depend on the label the plaintiff gives it or the relief the plaintiff seeks but on the primary right involved.' [Citation.] Here, it is clear that the primary right involved in all of appellant's claims is 'the right to competent legal representation' [citation], and thus, for application of the actual innocence requirement, all are properly characterized as claims for legal malpractice . . . . [¶] In the instant case, although appellant gives various labels to his causes of action, the alleged facts supporting the claims show that all of them are based on legal malpractice, the primary right being the right to competent representation in the proceedings involving restitution and the related probation violations. [Citation.]" (*Khodayari, supra,* 200 Cal.App.4th at pp. 1190-1191; see also *Lynch v. Warwick* (2002) 95 Cal.App.4th 267, 269-273.)

Just so here. As noted above, appellant's second amended complaint includes nine causes of action, but all of them clearly relate to and are dependent on appellant's charge that Hall committed "Legal Malpractice (Professional Negligence)" as alleged in his first cause of action and/or provided "Ineffective Assistance of Counsel" as alleged in his second cause of action.

The *Khodayari* court then went on to consider "whether the actual innocence requirement applies to these claims"; it had no difficulty in concluding that it did, relying initially on our Supreme Court's decisions in *Wiley* and *Coscia.* It explained: "As we have noted, 'in a criminal malpractice action actual innocence [of the underlying criminal charges] is a necessary element of the plaintiff's cause of action.' (*Wiley, supra*, 19 Cal.4th at p. 545; see *Coscia, supra*, 25 Cal.4th at p. 1197.) In addition, 'an individual convicted of a criminal offense must obtain reversal of his or her conviction, or other exoneration by postconviction relief, in order to establish actual innocence in a criminal malpractice action.' (*Coscia, supra*, 25 Cal.4th at p. 1201.)." (*Khodayari, supra,* 200 Cal.App.4th at p. 1192.)

6

The *Khodayari* court then went on: "In determining whether and to what extent the actual innocence requirement applies to this case, the analysis in *Brooks v. Shemaria* (2006) 144 Cal.App.4th 434 (*Brooks*) is instructive. In *Brooks*, the court considered whether the actual innocence requirement applied to a claim for professional negligence arising from an attorney's representation in proceedings for a return of seized property, which occurred after judgment on the defendant's conviction and sentence. (*Id.* at p. 441.) The court noted that '[u]nder *Wiley*, the actual innocence requirement applies to claims for "criminal malpractice," which the Supreme Court defined as " ' "legal malpractice *in the course of defending* a client accused of crime." . . .' [Citation.]" [Citation.]' (*Id.* at p. 442.) But the court also observed that '[i]n *Coscia* . . . , the Supreme Court characterized its holding in *Wiley* as applying to any "legal malpractice case *arising out of a criminal proceeding.*" [Citation.]' [Citation.] [¶] The court in *Brooks* reasoned that 'the issue of whether the actual innocence rule applies . . . should not be resolved in a formulaic manner, either by labeling the return of property proceedings "criminal" or "civil" (the parties' approach), by determining whether they took place in the course of [the attorney's] defense of [the defendant] (as suggested by *Wiley*), or by deciding whether [the defendant's] professional negligence claim arises out of a criminal proceeding (as suggested by *Coscia*). Rather, we must look to the policy considerations underlying the actual innocence requirement to see whether they justify application of the requirement here.' (*Brooks, supra*, 144 Cal.App.4th at p. 442.) [¶] As articulated in *Brooks*, those policy considerations are as follows. 'First, we should not permit a guilty defendant to profit from his or her own wrong. [Citation.] Second, to allow guilty defendants to shift their punishment to their former attorneys would undermine the criminal justice system. [Citation.] Third, "a defendant's own criminal act remains the ultimate source of his predicament irrespective of counsel's subsequent negligence." [Citation.] Fourth, a guilty defendant who is convicted or given a longer sentence as a result of counsel's incompetence can obtain postconviction relief on that basis; in contrast, "a civil matter lost through an attorney's negligence is lost forever." [Citation.] Fifth, there are formidable practical problems with criminal malpractice

7

litigation, including the difficulty of quantifying damages and the complexity of the standard of proof, which must combine the preponderance of the evidence standard with the reasonable doubt standard applicable in a criminal trial. [Citation.]' (*Brooks, supra*, 144 Cal.App.4th at pp. 442–443.)" (*Khodayari, supra,* 200 Cal.App.4th at pp. 1192-1193.)

The *Khodayari* court then considered each of the five "policy consideration[s]" outlined in *Brooks* (*Khodayari, supra,* 200 Cal.App.4th at pp. 1194-1196) and concluded that they applied. It stated: "Based on the policies supporting the actual innocence requirement as applied to this case, we conclude that as an element of all of his claims (each of which sounds in legal malpractice in the proceedings regarding restitution and related probation violations), appellant must plead actual innocence of his probation violations and must obtain postviolation exoneration. . . . [¶] Because appellant failed to allege his actual innocence of his probation violations, i.e., facts showing that he timely paid restitution and fully cooperated with the financial evaluator, and also made no showing that he obtained postviolation exoneration, the demurrer to all his causes of action was properly sustained." However, because the parties agreed that "appellant's appeal from the probation violation is still pending . . . the proper remedy under *Coscia, supra,* 25 Cal.4th at pages 1210-1211 is to 'stay the malpractice action during the period in which . . . plaintiff timely and diligently pursues postconviction remedies.' " (*Khodayari, supra,* 200 Cal.App.4th at pp. 1196-1197.)

In his briefs to us, appellant does not cite *Khodayari* or *Brooks.* But he does cite the two California Supreme Court decisions relied on in them, *Coscia* and *Wiley*, stating: "The California Supreme court held in [*Wiley*, *supra*,] 19 Cal.4th 532 and [*Coscia*, *supra*,] 25 Cal.4th 1194 that a criminal defendant must prove his actual innocence in order to prevail on a malpractice action against his criminal defense attorney. Turner has all along maintained his actual innocence, and he has pleaded actual innocence in his Second Amended Verified Complaint. Turner has unwaiveringly alleged that many of his special conditions of parole which formed the basis for his parole revocation in April 2010 were and still are invalid because of constitutional and statutory violations

8

perpetrated by the California Parole Department. In fact, Turner is currently vigorously challenging those special conditions of parole in a state tort lawsuit, presiding Judge, Hon. Lawrence Appel, Case No.: RG11574935 and in a federal civil rights lawsuit in the United States District Court for the Northern District of California pursuant to 42 U.S.C. § 1983, presiding Judge, Hon. Charles R. Breyer, Case No.: C11-05176 CRB. Turner anticipates that the eventual outcome will prove that his April 2010 parole revocation was indeed predicated on invalid and unconstitutional parole conditions for which the remedy is to vacate those convictions, thereby giving him the necessary post-conviction exoneration that will allow him to proceed with the instant action against the defendants. Therefore, pursuant to California Supreme Court decisional law in [*Coscia*, *supra*,] 25 Cal.4th 1194, the proper course of action is for this court to reverse the trial court's decision and to place the instant action in abeyance pending the outcome of the plaintiff's post-conviction remedies." Appellant repeats this argument in his reply brief to us.

Unfortunately for appellant, this "wait for the post-conviction remedies to be decided" argument doesn't work too well for him. Indeed, this court—in an order filed *over a year* before appellant's opening brief was filed—*denied* his petition for a writ of mandate, one of the "post conviction remedies" he was seeking. Further, on October 9, 2012, federal district Judge Charles Breyer entered an order denying appellant's fourth pretrial request for injunctive relief in the federal court action (No. C11-05176 CRB in the Federal District Court for the Northern District of California) and, a few months later, entered an order granting the defendants' motion to dismiss appellant's complaint, which contained 47 causes of action against multiple defendants.[4]

We understand, from the online records of that court, that appellant has appealed Judge Breyer's order to the Ninth Circuit. However, because, for all the reasons noted above regarding the lack of merit of appellant's legal malpractice action, we decline to hold that this court must stay the ruling of the trial court until the Ninth Circuit rules in the federal appeal.

---

[4] The defendants in the federal court action did not include Hall.

Regarding the issue of costs, in his separate appeal from the trial court's order denying his motion to strike Hall's memorandum of costs (No. A137034 in this court), appellant concedes that the prevailing party is entitled to his or its costs and that "if the trial court's judgment is affirmed (in the "Lead Case" [i.e., No. A135943, the appeal just discussed]), then the defendants'/respondents cost memorandum will also be affirmed." He concedes that there is no issue regarding "the reasonableness of the costs awarded." We agree and, such being the case, the trial court's order denying appellant's motion to strike respondent Hall's memorandum of costs is affirmed.

## IV. DISPOSITION

The judgment in favor of respondents and the trial court's order denying appellant's motion to strike costs are both affirmed.

_____
Haerle, Acting P.J.

We concur:

_____
Lambden, J.

_____
Richman, J.

10